Oscar A. Gandía, demandante y apelante, *v.* Heriberto Marín, en su carácter de Presidente del Circuito de Baseball Aficionado de Puerto Rico, Inc., demandado y apelado.

Núm. 8866.—*Sometido:* Abril 18, 1944. *Resuelto:* Mayo 1, 1944.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados del apelante; *José M. Valentín Esteves,* abogado del apelado.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

El día 6 de septiembre de 1943, Oscar A. Gandía, apoderado del equipo de baseball "Piratas", radicó ante la Corte

de Distrito de San Juan una demanda de *injunction*, en la que alegó en síntesis lo siguiente:

Que el equipo "Piratas" es miembro y fundador del Circuito de Baseball Aficionado de Puerto Rico, Inc., corporación organizada para fines no pecuniarios, de la cual es Presidente el demandado Heriberto Marín; que en 31 de agosto de 1943, el demandado Marín envió al demandante una comunicación suspendiéndole por un período de cuatro semanas—septiembre 6 a 26 de 1943—y prohibiéndole estar en o visitar la caseta de los jugadores del equipo "Piratas" durante los días de juegos o en forma alguna dirigir dicho equipo.

Alegó el demandante que la suspensión y castigo impuéstosle por el demandado constituían una infracción del procedimiento mandatoriamente dispuesto en la Constitución del Circuito de Baseball Aficionado de Puerto Rico, Inc., por razón de que el demandante nunca fué notificado de querella alguna en su contra, ni se le dió oportunidad para ser oído y defenderse; y, además, que el Presidente de la Asociación carece de jurisdicción, autoridad o facultad para imponer por su cuenta tales castigos, salvo que medien los requisitos exigidos por la Constitución de dicha Asociación, los cuales no se han cumplido en el presente caso.

Después de alegar los daños que había de causarle la orden de suspensión, el demandante solicitó la expedición de un auto de injunction permanente contra el demandado, prohibiéndole poner en vigor la orden de suspensión. El mismo día en que se radicó la demanda, la corte inferior expidió una orden de entredicho y para mostrar causa por las cuales no debiera decretarse un injunction *pendente lite*. El demandante prestó una fianza por $300.

El día 7 de septiembre de 1943, el demandante radicó una moción solicitando se citase al demandado y se le condenase por desacato. En dicha moción alegó que la orden de entredicho fué notificada al demandado Marín el 6 de septiembre a la 1:00 p. m. por el márshal de la corte; que dicha orden

se hizo expresamente extensiva a dicho demandado y a sus agentes, sirvientes, empleados, abogados u oficiales subalternos; que el 6 de septiembre, a las 2:00 p.m. comenzó un juego de baseball en el que tomaba parte el equipo "Piratas", empezando a actuar como "umpire" el Sr. Adolfo Salazar, designado por el demandado, con instrucciones escritas del demandado para impedir que el demandante actuase como director de su equipo y para obligarle a retirarse del terreno del juego, y en caso de que el demandante se negara a obedecer dichas órdenes, para que confiscase los juegos a celebrarse, a favor del equipo contrario al del demandante; que el referido Salazar, no obstante haber sido notificado por Marín para que no cumpliera las instrucciones escritas y haberle sido mostrada una copia certificada de la orden de entredicho, se negó a cumplir dicha orden y procedió a confiscar los dos juegos que habían de celebrarse aquella tarde, a favor del equipo contrario. Alegó, además, el demandante, que Marín violó también la orden de entredicho al no dejar sin efecto las instrucciones escritas dadas a Salazar, de una manera efectiva, pues se limitó a telefonear a un presidiario para que se entrevistara con el sargento de guardia y le pidiese a éste que dijera a Salazar que las instrucciones que le había dado quedaban sin efecto.

Citados Salazar y Marín para mostrar causa por las cuales no debían ser condenados por desacato, comparecieron ante la corte inferior el 13 de septiembre de 1943. Oída la prueba ofrecida por ambas partes, la corte dictó una resolución exonerando a ambos demandados, porque "está convencida que los querellados en forma alguna desacataron la orden de la corte". No estando conforme con dicha resolución, el demandante interpuso el presente recurso.

■■ Sostiene el apelante que la corte inferior erró al exonerar a los querellados, porque a su juicio la evidencia practicada demostró la comisión del desacato. Esto nos obliga a hacer un detenido examen de la prueba.

El hecho de la notificación de la orden de entredicho a Marín quedó establecido por la declaración del márshal y por la admisión de Marín de haber recibido copias de la petición y del mandamiento.

Declaró el demandante Gandía: El 6 de septiembre de 1943 el equipo "Piratas", del cual él es *manager*, tenía que celebrar dos juegos de baseball. En ese día no pudo actuar como manager de dicho equipo porque se lo impidió el Sr. Salazar, quien actuaba como "umpire". Al comenzar el juego, cuando él se acercó al "coaching plate", para desde allí dirigir el equipo, Salazar le dijo que tenía que retirarse porque tenía instrucciones escritas del Presidente Marín para que no se le permitiese en el terreno. Entonces él le mostró a Salazar una copia certificada de la orden de entredicho dictada dos horas antes por el Juez Romany; y Salazar, después de leer la orden de entredicho, le dijo que él tenía una orden escrita del Presidente del Circuito, "que era la que él iba a cumplir". Gandía le informó a Salazar que si no cumplía la orden de la corte podría incurrir en responsabilidad y Salazar le contestó "que él se acogía a lo que viniera y que la orden que él cumplía era la del Sr. Heriberto Marín". Cuando estaban esperando a Salazar para empezar el juego en el campo contiguo al Presidio Insular, llegó un confinado con un papel que decía que Marín había llamado por teléfono para que le avisara a Salazar que podía permitir a Gandía dirigir su equipo ese día; y Salazar, después de leer el mensaje dijo que él no cumplía tampoco esa indicación porque teniendo una orden escrita no la iba a sustituir por una orden telefónica. Gandía no pudo seguir actuando como manager, y al insistir en su derecho, Salazar, cumpliendo las instrucciones de Marín, confiscó los dos juegos, causando a Gandía la pérdida de $60 que había gastado. Marín no estuvo en todo ese día en la Liga del Presidio. Cuando Salazar hubo terminado de leer la orden de entredicho, le dijo a Gandía, "esto es contra este señor nada más", o sea contra Marín.

Gandía le contestó que la orden era extensiva a los agentes, empleados y sirvientes, a lo que Salazar replicó que él no era "sirviente" de Marín. Gandía le respondió que él, Salazar, era un "empleado" del Circuito porque estaba cobrando por arbitrar los juegos.

Declaró el Sr. Pedro Vázquez, comentarista de la Radio, que en la ya indicada fecha él habló con el Sr. Salazar sobre el asunto de la suspensión de Gandía. Salazar le informó que había recibido una comunicación telefónica pero no directa de Marín, que se la había entregado el telefonista del Presidio, y que Marín le daba instrucciones para que permitiera a Gandía dirigir su equipo. Salazar dijo que él no podía dar crédito a esa orden telefónica porque no la había recibido directamente de Marín. Cuando después de comenzado el juego Salazar le dijo a Gandía que no podía permitirle estar allí en la Liga, Gandía sacó del bolsillo la copia de la orden del Juez Romany y se la enseñó a Salazar y éste dijo que él no podía acatar esa orden porque no era contra él y sí contra el Presidente del Circuito y que para él lo único oficial era el documento escrito por el Presidente.

El querellado Heriberto Marín, declarando en su propia defensa, dijo: Como a la 1:15 p.m. recibió la orden de entredicho, la leyó e inmediatamente salió en busca de un teléfono por no tener uno en su casa. Fué al colmado, desde donde acostumbra hacer sus llamadas y lo encontró cerrado. Por fin pudo usar el teléfono en una botica en la parada 22. Llamó primeramente a una compañía de taxis y no tenían un taxi disponible para llevarlo a la Liga del Presidio. Entonces llamó al Presidio y habló con el encargado del cuadro telefónico y le dió instrucciones para que dijese a Salazar que permitiera a Gandía dirigir su equipo desde el terreno. El juego debía comenzar a la 1:30 p.m. Como a las dos menos diez volvió a llamar al Presidio para ver si su orden había sido cumplida, habló con la misma persona de la primera vez y esa persona le dijo que su orden había sido entregada.

Terminadas esas gestiones se fué al juego en el Parque Sixto Escobar, que comenzó a las tres de la tarde. Después supo que la orden de la corte no había sido cumplida.

El otro querellado, Salazar, declaró: Él iba a actuar como árbitro principal en los juegos de ese día. Un día antes el Presidente del Circuito le dió instrucciones por escrito en relación con el señor Gandía. Cuando él llegó al sitio del juego ya Gandía estaba allí, pero no le dijo nada. Cuando iba a comenzar el juego llegaron dos confinados y le entregaron una nota firmada por F. Castro y Jim Correa, dos confinados. En la nota Marín le decía que permitiese a Gandía dirigir su equipo. Recibió la nota antes de hablar con Gandía. Cuando él dió la orden para empezar el juego, vió que Gandía estaba allí y como él tenía las instrucciones de Marín mandó parar el juego y le dijo a Gandía que no podía dejarlo allí. Entonces Gandía le mostró unos papeles que sacó del bolsillo. Examinó los papeles y no vió en ellos el sello de la corte ni nada que justificara que el documento era de la corte. Entonces le informó a Gandía que no podía participar en los juegos porque estaba castigado por cuatro semanas por el Circuito. Que no hizo caso de la nota de los confinados porque él conoce esos "bochinches" de llamar por teléfono, y se dijo "esto me huele a malo". Entonces fué al Presidio para hablar por teléfono y tratar de localizar a Marín, pero no pudo conseguirlo después de tratar durante media hora. Ignora si el papel que le enseñó Gandía estaba certificado por el secretario de la corte. No es cierto que él le dijera a Gandía que se acogía a lo que viniera. Que es cierto que él le dijo a Gandía que la orden era contra Marín y no contra él. Que la verdad es que él dudó de que el papel que le enseñó Gandía fuese legal y por eso prefirió seguir las instrucciones de Marín. Que si hubiese visto el sello de la corte, él no es quien para desacatar a la corte. Que él tuvo sus dudas en cuanto a las firmas en el papel. Que nadie puede dar crédito a una nota telefónica firmada por dos criminales empedernidos a quienes conoce.

Asumiendo, sin resolverlo, que el querellante, en un caso como el de autos, tenga derecho a apelar de una sentencia absolviendo a los querellados, hemos estudiado el caso en sus méritos. Considerada la evidencia en conjunto y las circunstancias especiales del caso, creemos posible que la corte sentenciadora, que tuvo ante sí y oyó declarar a los testigos de ambas partes, tuviera una duda razonable en cuanto a si los querellados tuvieron la intención de desacatar la orden de la corte. Por esos motivos, y por haber aceptado la corte inferior como suficientes las excusas ofrecidas por los querellados, creemos que no estaría justificada nuestra intervención. Debemos hacer constar, sin embargo, que tampoco hubiéramos intervenido si el fallo de la corte inferior hubiese declarado a los querellados culpables del desacato que les fué imputado.

Creemos oportuno hacer constar aquí que no hay nada que conduzca más fácilmente al descrédito y a la falta de respeto a las órdenes judiciales, que la benignidad con que muchos tribunales tratan a los acusados de violar o desacatar sus órdenes. Las órdenes judiciales deben ser acatadas sin discusión y sin excusas por aquéllos contra quienes van dirigidas, y éstos deben hacer todas las gestiones humanamente posibles para cumplir el mandato del tribunal. Éste, después de haber expedido una orden, debe insistir en hacer que sea respetada y no debe aceptar razones o motivos baladíes para excusar o perdonar un manifiesto desacato.

*La sentencia recurrida debe ser confirmada.*