EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SANTOS MARTÍNEZ PADRÓ, acusado y apelante.

*Números:* CR-64-88—CR-64-90 *Resueltos:* 9 de diciembre de 1964

*Rafael Toro Cubergé,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

PER CURIAM: El apelante Santos Martínez Padró fue acusado de asesinato genérico consistente en que "ilegal, voluntaria y criminalmente, con malicia, premeditación y deliberación, demostrando poseer un corazón pervertido y maligno, con el propósito firme y decidido de darle muerte ilegal a un semejante, acometió y agredió con un revólver, arma de fuego, al ser humano Jorge Luis Ortiz González, c/p Gino, haciéndole un disparo que le produjo una herida de bala, que fue la causa directa de su muerte." Fue juzgado ante un jurado y convicto de asesinato en segundo grado. La única prueba que desfiló fue la de cargo, que incluyó una confesión del acusado cuya voluntariedad fue expresamente admitida.

En el informe del delegado del Procurador General se resume como sigue la forma en que ocurrieron los hechos:

"El día 20 de enero de 1963 el acusado se dirigía hacia su casa en el Barrio Fraile de Yauco como de seis y media a siete de la noche. El acusado iba caminando por un camino obscuro y al llegar a una hondonada vio un bulto blanco que caminaba hacia él. Al ver el mencionado bulto blanco el acusado sacó un revólver que portaba y dijo: 'quién vive, quién vive', y al no recibir contestación hizo un disparo hacia abajo. El bulto siguió avanzando hacia el frente y entonces el acusado hizo otro disparo, esta vez hacia el bulto, el cual se encontraba entonces a una distancia de 40 pies del acusado. Se escuchó un quejido y el bulto cayó al piso, y cuando el acusado encendió un fósforo encontró que había herido a Jorge Luis Ortiz González c/p Gino. El acusado entonces fue a la casa de Ortiz González y le dijo a la hermana de éste que había encontrado a Ortiz tirado en el camino. Entre los dos llevaron al herido al hospital de Sabana

Grande, donde un médico certificó que había muerto. Al otro día el acusado escondió el revólver, pero luego, al relatarle a los policías la forma en que ocurrieron los hechos, llevó a éstos al lugar donde había escondido el arma."

Dos son los señalamientos de error: (1) que de la prueba no surge que el apelante actuara con malicia, premeditación y deliberación y demostrara poseer un corazón pervertido y maligno; y, (2) que el tribunal se negó a trasmitir al jurado instrucciones sobre defensa propia.

 Como la convicción en el presente caso fue por el delito de asesinato en segundo grado podemos hacer caso omiso en cuanto el planteamiento se refiere al elemento de deliberación. Considerado el resumen de la prueba que hemos transcrito precedentemente tampoco puede prosperar pues según expresamos en *Pueblo* v. *Rosario Centeno*, 90 D.P.R. 874 (1964), que envolvía hechos similares, "El concepto de malicia premeditada implica la ausencia de justa causa o excusa al ocasionar la muerte y la existencia de la intención de ocasionar la muerte a un semejante. Como dijimos en *Pueblo* v. *Méndez*, 74 D.P.R. 913, 921–922 (1953), '[e]sa intención se puede manifestar a través de uno de los dos siguientes elementos, cualquiera de los cuales es suficiente para determinar la existencia de malicia premeditada, a saber, (*a*) la intención específica de matar, considerada como equivalente al deseo y propósito directo, explícito y definido de matar, o sea, precisamente formulado con el objetivo directo de matar [citas], o (*b*) la intención de realizar un acto o de producir un grave daño corporal cuya consecuencia probable sea la muerte de una persona,' sin que sea indispensable que se demuestre el propósito de privar de la vida a un ser humano determinado, pues basta que se cree un riesgo sustancial de muerte, *Pueblo* v. *Cruz*, 49 D.P.R. 653, 658–659 (1936)."

 Los hechos admitidos en la confesión tampoco justificaban al tribunal a dar instrucciones sobre defensa propia. Nada indica que la conducta observada por el apelante res-

pondiera a motivos fundados para creer que se encontraba en inminente peligro de muerte o de recibir grave daño corporal, cf. *Pueblo* v. *Túa,* 84 D.P.R. 39, 60–66 (1961), sino a un temor exagerado, hijo de la superstición o de la superchería.

 Al examinar los autos originales hemos notado que el tribunal de instancia, ante una moción que meramente alegaba que "las cuestiones envueltas en este caso son unas que envuelven complicados principios de derecho que según el mejor entender del acusado no han sido planteados," y con la inexplicable conformidad del fiscal de distrito, accedió a fijar fianza en apelación. Si bien es ésta una cuestión que cae dentro de la sana discreción del tribunal sentenciador, tal discreción debe responder al criterio que entonces proveía el Art. 374 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1215, similar a la vigente Regla 198 de las de Procedimiento Criminal de 1963, sobre la sustancialidad de las cuestiones planteadas o la naturaleza del delito. Como hemos visto, ni siquiera se señalaron por la defensa cuáles eran estas cuestiones sustanciales. Una lectura de la transcripción de evidencia y el examen de la prueba documental nos convencen que no era éste un caso apropiado para la concesión de fianza, que no debe considerarse como una mera cuestión de rutina. Ello es todavía más evidente cuando se consideran las infracciones a la Ley de Armas.

*Se confirmarán las sentencias dictadas por el Tribunal Superior, Sala de Ponce, en 25 de marzo de 1963.*