EL PUEBLO DE PUERTO RICO, apelado, *v.* GERARDO GÓMEZ NAZARIO, acusado y apelante.

Número: CR-86-44     Resuelto: 20 de abril de 1988

*Cándida Valdespino Zapata,* de la *Sociedad para Asistencia Legal,* abogada del apelante; *Rafael Ortiz Carrión, Procurador General,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Los hechos que dan lugar al presente recurso constituyen un ejemplo más del deterioro moral de la sociedad en que convivimos. Los mismos son demostrativos del absoluto desprecio e insensibilidad con que actúan algunos de nuestros conciudadanos respecto a la vida y seguridad de sus semejantes. Examinémoslos.

I

El día 9 de abril de 1985, en horas de la noche, un vehículo de motor, conducido por el apelante Gerardo Gómez Nazario, fue observado *mientras perseguía a una alta velocidad a otro automóvil* conducido por la Sra. Elena Corchado Aldahondo, ex esposa del apelante, quien viajaba en el mismo en compañía de un joven amigo de nombre Nelson Villanueva Acevedo. *Mientras los perseguía, el apelante chocaba con su vehículo al automóvil conducido por su ex esposa por la parte trasera.*(1) Con motivo de lo anteriormente expresado,(2) la Sra. Elena Corchado Aldahondo perdió el control del vehículo que conducía, invadiendo el carril contrario e impactando con su automóvil un tercer vehículo de motor que viajaba en dirección contraria, el cual era conducido por el Sr. Israel Feliciano Nieves. Inmediatamente después de la mencionada colisión, el apelante se desmontó de su vehículo y se dirigió corriendo hacia el automóvil en que viajaba su ex esposa y el joven Villanueva Acevedo, agrediendo a éste — quien se encontraba colgando de la puerta derecha del auto-

---

(1) Un examen realizado por la Policía de Puerto Rico del auto de la occisa y del vehículo del apelante demostró que el de la occisa había sufrido varios impactos por su parte trasera y el del apelante mostraba varios signos de impacto por su parte delantera. Ello, igualmente, surge de fotografías de dichos vehículos admitidas en evidencia.

(2) No hubo prueba testifical directa sobre la "conducta" del acusado inmediatamente antes del momento preciso de la colisión ocurrida entre ambos vehículos.

móvil en que viajaba— en el área de la cabeza con unos "chacos",(3) luego de lo cual huyó del lugar.(4)

Como consecuencia de este trágico incidente, fallecieron la Sra. Elena Corchado Aldahondo, el joven Nelson Villanueva Acevedo y la niña de cinco años de edad —que viajaba en el tercer vehículo de motor— Debbie Feliciano Feliciano;(5) resultando heridos el Sr. Israel Feliciano Nieves y su esposa Carmen Gloria Feliciano Sanabria, y los hijos de éstos, Ricardo y Johnny Feliciano Feliciano, quienes viajaban en el vehículo que fuera impactado por la señora Corchado Aldahondo.(6)

Procede que se enfatice que ante el jurado que actuó como juzgador de los hechos en el presente caso desfiló prueba, en adición, a los efectos de que la occisa Elena Corchado, no obstante haberse divorciado del apelante, continuaba "viviendo" con éste debido a una serie de amenazas proferidas por el apelante; que en el año de 1981 la occisa, luego de ser agredida por el apelante y encontrándose recibiendo tratamiento médico en un hospital, fue amenazada por éste con un revólver;(7) *que cuatro días antes de los hechos, esto es, el 5 de abril de 1985, el apelante le manifestó a la hermana de la occisa, que por razón de que ésta lo estaba mortificando mucho, él la iba a matar,* y que, luego de haber

---

(3) Dicho instrumento se compone de dos pedazos de madera unidos en el centro por un cordón; los mismos son utilizados en el deporte del "Karate".

(4) Resulta procedente que se señale que del protocolo de autopsia del occiso Nelson Villanueva Acevedo, el cual fue admitido en evidencia durante el proceso celebrado, surge que la causa de su muerte fue un "severo trauma cráneo-cerebral y cervical". Igualmente surge de dicho documento que "... el golpe recibido después del accidente no tuvo que ver con la causa de la muerte".

(5) En relación con dichas muertes, se radicaron contra el apelante tres acusaciones por el delito de asesinato en primer grado.

(6) En relación con las heridas sufridas por dichas personas, el Ministerio Público radicó cuatro acusaciones por tentativa de asesinato.

(7) Por estos hechos de 1981, el apelante fue denunciado por infracción a la Ley de Armas, denuncias que luego fueron archivadas al amparo de lo dispuesto por la Regla 247 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

ocurrido los hechos, el apelante le manifestó a esa misma persona que "había matado como cuchocientas gentes" [*sic*].

## II

Con motivo de dichos hechos, el Ministerio Fiscal radicó acusaciones contra el aquí apelante por tres casos de asesinato en primer grado y cuatro casos de tentativa de asesinato ante el Tribunal Superior de Puerto Rico, Sala de Aguadilla. El jurado que intervino en el proceso que le fuera celebrado al apelante ante dicho tribunal rindió veredicto de culpabilidad por un delito de asesinato en segundo grado,[8] dos por el delito de homicidio voluntario,[9] y cuatro veredictos por el delito de tentativa de homicidio.[10]

Sentenciado por el tribunal de instancia a cumplir las penas, concurrentes entre sí, de quince, nueve y cuatro años de reclusión respectivamente, en apelación le imputa al foro de instancia la supuesta comisión de tres errores, a saber:

A. Los veredictos son abiertamente inconsistentes entre sí y no son conforme a la prueba desfilada.

B. El acusado no tuvo el beneficio de una representación legal efectiva.

C. El ministerio público no probó más allá de toda duda razonable los delitos imputados al convicto apelante. Alegato del apelante, pág. 17.

## III

De entrada, procede que se señale que la actual representación legal del apelante, esto es, la División de Apelaciones de la Sociedad para Asistencia Legal, se *abstiene*, en el alegato que radicara, de discutir el segundo señalamiento de

---

[8] En relación con la muerte de Nelson Villanueva Acevedo.

[9] En relación con las muertes de Elena Corchado y Debbie Feliciano.

[10] Con relación a los cuatro heridos, esto es, los esposos Feliciano y sus dos hijos.

error, "por no encontrar base suficiente que justifique la impugnación de la convicción por representación legal deficiente o incompetente . . .".

Hemos revisado detenidamente la exposición narrativa de la prueba. Estamos de acuerdo con la aseveración de la referida Sociedad a los efectos de que dicho señalamiento es uno inmeritorio. Un examen del récord no revela que la actuación del abogado defensor a nivel de instancia impidiera que el apelante tuviera un juicio justo e imparcial. Véanse: *Pueblo v. Morales Suárez*, 117 D.P.R. 497 (1986); *Strickland v. Washington*, 466 U.S. 668 (1983).

## IV

Procedemos a discutir los restantes dos señalamientos de error en forma invertida. Mediante el tercer señalamiento el apelante sostiene que —no obstante sus "manifestaciones anteriores de amenaza de muerte, de una conducta irreflexiva por un arrebato de cólera de chocar el carro de su mujer por detrás cuando la va persiguiendo . . ."— no se estableció su culpabilidad más allá de duda razonable por razón de que no se probó relación causal entre su conducta y la colisión ocurrida entre los dos vehículos de motor en que murieron tres seres humanos y resultaron heridos, adicionalmente, cuatro personas; esto es, alega el apelante que no se estableció, fuera de duda razonable, que lo realizado por él fue "un factor directo y substancial como causa de la muerte" de los perjudicados. No tiene razón.

Si bien es cierto que no hubo prueba testifical directa sobre lo sucedido *inmediatamente* antes de la colisión ocurrida entre el vehículo conducido por la occisa Elena Corchado y el tercer vehículo envuelto en el incidente, no es menos correcto que durante el proceso celebrado se presentó suficiente evidencia de la cual se puede *razonable y lógicamente inferir* que los actos cometidos por el apelante fueron *la*

*causa directa* de la colisión ocurrida entre los dos vehículos de motor antes mencionados.[11]

Como bien señala el Procurador General en el informe que rindiera en el presente caso, no era absolutamente necesario que el Estado presentara *prueba directa* a los efectos de que lo que causó que el vehículo de la occisa Corchado impactara al otro automóvil fue el golpe, o golpes, que le proporcionara el apelante con su vehículo al automóvil de su ex esposa. *El juzgador de los hechos —en este caso, el jurado— podía así concluirlo como una inferencia lógica de los hechos que dieron por establecidos.*

■ Como expresáramos en *Pueblo v. Torres Nieves*, 105 D.P.R. 340, 346 (1976), el Estado puede demostrar la culpabilidad de un imputado de delito más allá de toda duda razonable mediante evidencia directa o por medio de evidencia circunstancial, o mediante una combinación de ambas.

## V

El primer señalamiento de error —a los efectos de que los veredictos rendidos por el jurado son abiertamente inconsistentes entre sí y que los mismos no son conformes a la prueba desfilada— es igualmente inmeritorio. El apelante argumenta, en síntesis, que la prueba presentada ante el foro de instancia no sostiene el veredicto de asesinato en segundo grado rendido por el jurado en uno de los cargos ya que lo que dicha prueba demuestra, a lo sumo, es la comisión por parte del apelante del delito de homicidio voluntario;

---

[11] En primer lugar, existe prueba testifical incontrovertida a los efectos de que el apelante persiguió a una alta velocidad al vehículo de su ex esposa y de que, cuando menos, lo impactó en una ocasión por la parte trasera.

En segundo lugar, desfiló prueba testifical y documental —por medio del testimonio del policía investigador del incidente y de fotografías— a los efectos de que tanto el vehículo del apelante, por su parte delantera, como el vehículo de su ex esposa, por su parte trasera, sufrieron el impacto de varias acometidas. Dicha prueba es una igualmente incontrovertida.

esto es, que las muertes ocurridas fueron el producto de un arrebato de cólera por parte del apelante al observar a su ex esposa con otro hombre.

No estamos de acuerdo. Somos del criterio que la prueba presentada por el Estado en el presente caso es suficiente, inclusive, para sostener veredictos —de haberlo así entendido procedente el juzgador de los hechos— por el delito de asesinato en primer grado.

En primer lugar, debe mantenerse presente que nuestro Código Penal, en su Art. 15 (33 L.P.R.A. sec. 3062), establece en lo pertinente que:

El delito es intencional:

(a) Cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; . . .

■ Sin lugar a dudas, una persona que persigue con su automóvil a otro vehículo de motor a alta velocidad, en horas de la noche, impactándolo por la parte trasera, tiene la intención específica de causarle grave daño corporal, y hasta la muerte, al conductor y ocupantes de ese segundo vehículo de motor.

■ En segundo lugar, la diferencia entre los dos grados del delito de asesinato consiste, como correctamente señala el propio apelante, en que en el asesinato en primer grado la muerte se realiza *con malicia premeditada y deliberada* mientras que en el segundo grado la muerte es maliciosa y premeditada *sin que medie deliberación. Pueblo v. Torres Montañez*, 106 D.P.R. 125 (1977); *Pueblo v. Barriera González*, 89 D.P.R. 772 (1964); *Pueblo v. Blanco*, 77 D.P.R. 767 (1954). Esta "malicia premeditada", por otro lado, es un elemento mental de hecho *a ser determinada por el juzgador de los hechos*. Véanse: *Pueblo v. Ortiz Rodríguez*, 100 D.P.R. 972 (1972); *Pueblo v. Torres Nieves*, ante.

■ Recordaremos que la prueba presentada por el Estado fue a los efectos de que cuatro días antes del 9 de abril

de 1985, el apelante le manifestó a la hermana de su ex esposa que él iba a matar a ésta por razón de que ella lo estaba mortificando mucho. Si a ello le añadimos el período de tiempo durante el cual el día de los hechos el apelante persiguió a su ex esposa —período obviamente suficiente para concebir el elemento de la deliberación, *Pueblo v. Torres Montañez*, ante— y el hecho de que luego del accidente, estando el joven que acompañaba a su ex esposa obviamente mal herido o muerto, el apelante agrede con un instrumento a éste, parece ser mandatoria la conclusión a los efectos de que el apelante no sólo tenía la intención específica de matarlos, sino que actuó con malicia premeditada *y deliberada.*(12)

■   En tercer lugar —ya en cuanto al argumento específico de que el veredicto procedente lo era el de homicidio voluntario en todos los casos— es de todos conocido que "'para que la provocación reduzca el delito de asesinato a homicidio voluntario tiene que ser aquella de naturaleza tal que *haga perder el dominio de sí mismo a un hombre de temperamento corriente* obligándolo a actuar por el impulso producido por notable provocación, *sin la debida reflexión y sin formar un determinado propósito*'". (Énfasis suplido.) *Pueblo v. Reyes Acevedo*, 100 D.P.R. 703, 707 (1972). Las circunstancias en que acontecieron los hechos es una cuestión que fue determinada, a la luz de las instrucciones impartidas por el tribunal, por el jurado en cuanto a cada uno de los pliegos acusatorios que contra el apelante radicara el Ministerio Fiscal.

---

(12) En relación con la muerte de la niña de cinco años que viajaba en el vehículo impactado por la occisa Elena Corchado Aldahondo, dispone el Art. 17 del Código Penal, 33 L.P.R.A. sec. 3081, que:

"Cuando por error o por algún otro accidente se comete delito en perjuicio de persona distinta, su autor incurrirá en la misma responsabilidad que si hubiere cometido el acto en perjuicio de la persona contra quien dirigió su acción."

■ Por último, y en cuanto a la alegación de que las sentencias apeladas deben ser revocadas por ser los veredictos rendidos "inconsistentes" entre sí, sabido es que reiteradamente hemos resuelto que de ordinario no constituye error que dé lugar a la revocación de una convicción el mero hecho de que el jurado que intervenga en un proceso en particular emita, respecto a diferentes pliegos acusatorios, veredictos que no guardan absoluta consistencia lógica entre sí. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986).

■ Debe quedar claro que la norma imperante en nuestra jurisdicción es a los efectos de que el hecho de que un jurado —olvidándose indebidamente del derecho trasmitídole en las instrucciones y, quizás, inspirado por un excesivo sentido de clemencia— se incline a favorecer a un imputado de delito en cuanto a algunos de los cargos, rindiendo veredictos de culpabilidad por un delito menor incluido, o de inocencia, no conlleva la nulidad del veredicto rendido por el delito mayor ni la reducción de éste al nivel de los demás.

Por los fundamentos antes expresados, *se dictará sentencia confirmatoria de las sentencias apeladas.*