EL PUEBLO DE PUERTO RICO, peticionario, *v.* JULIO CÉSAR RIVERA ALICEA, acusado y recurrido.

*Número:* CE-87-86 *Resuelto:* 19 de diciembre de 1989

*Rafael Ortiz Carrión, Procurador General, y Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo; *Arcelio Maldonado,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

Julio César Rivera Alicea, también conocido por Papo, fue denunciado por asesinato en primer grado e infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418. Celebrada la vista preliminar al amparo de la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, un juez instructor determinó causa probable por el delito de asesinato en segundo grado y por infracción a los artículos de la Ley de Armas de Puerto Rico imputados. Como consecuencia, el Ministerio Público formuló la correspondiente acusación.

Rivera Alicea solicitó al Tribunal Superior la desestimación de la acusación del delito de asesinato en segundo grado bajo la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Adujo que la determinación de causa probable fue contraria a la ley y a derecho, toda vez que en la vista preliminar surgió que "la prueba aportada por el Ministerio Público, a lo sumo se determinó, a efectos de la determinación de causa probable, que el acusado actuó en un arrebato de cólera y súbita pendencia, por lo que la determinación de causa probable debería ser por el delito de homicidio voluntario". Apéndice, pág. 3. Alegó que la prueba que tuvo ante sí el juez instructor no estableció el elemento de malicia premeditada, necesario para que pueda cometerse el delito de asesinato en segundo grado.

El Ministerio Público replicó a la moción de desestimación alegando que "en la vista preliminar . . . probó todos y cada uno de los elementos del delito de Asesinato en Segundo Grado y de la Violación a los Arts. 6 y 8 de la Ley de Armas". Apéndice, pág. 4.

El 1ro de diciembre de 1986, el tribunal de instancia declaró[1] con lugar dicha moción fundándose en que la "determinación de causa probable es contraria a la prueba" (Apéndice, pág. 5) y desestimó la acusación sin perjuicio de que se presentara otra por homicidio.

A solicitud del Procurador General, mediante trámite de mostrar causa y con el beneficio de la comparecencia de las partes, resolvemos.

I

 La vista preliminar es "un procedimiento preliminar al juicio que se celebra ante un magistrado para que se determine si el delito imputado en la denuncia ha sido cometido y si hay causa probable para creer que la persona así denunciada lo cometió". N. Frattallone di Gangi, *La Vista Preliminar*, 63 Rev. Der. Pur. 231 (1977). Dicha vista está fundamentada en la política pública de "evitar que se someta a un ciudadano en forma arbitraria e injustificada a los rigores de un proceso criminal". *Pueblo v. López Camacho*, 98 D.P.R. 700, 702 (1970). Su propósito es determinar si es necesario celebrar un juicio plenario contra el imputado, con las gravosas consecuencias que ello conlleva tanto para éste como para el Estado. En su dinámica interna funciona a base de probabilidades, esto es, si es probable que se haya cometido el delito y si probablemente fue cometido por el imputado. Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. De ahí que no exista una determinación final de inocencia o culpabilidad en esta etapa. Tal determinación se hace en el juicio propiamente. *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653, 660 (1985); *Pueblo v. González Pagán*, 120 D.P.R. 684 (1988).

---

[1] En su resolución el foro de instancia se lamentó de "no tener facultad para determinar causa probable por el delito de homicidio voluntario, a tenor con lo dispuesto en la Regla 24(c) de Procedimienento Criminal". Apéndice, pág. 5.

■ Cónsono con lo anterior, el Ministerio Público tiene discreción para no presentar toda su prueba en dicha vista. *Pueblo v. Figueroa Castro*, 102 D.P.R. 279 (1974). Sin embargo, se le requiere que presente prueba sobre *todos* los elementos del delito imputado en la denuncia y su conexión con el imputado. *Martínez Cortés v. Tribunal Superior*, 98 D.P.R. 652 (1970); *Vázquez Rosado v. Tribunal Superior*, 100 D.P.R. 592 (1972). La determinación de causa probable goza de la presunción legal de corrección, *Rabell Martínez v. Tribunal Superior*, 101 D.P.R. 796 (1973), una vez el Fiscal descarga cabalmente tal responsabilidad ante el juez instructor.

■ No obstante, cuando a juicio del imputado el Ministerio Público no ha descargado su deber —ya sea porque no ha demostrado la probabilidad de que se cometiera el delito imputado o, si demostrado, que el imputado probablemente lo cometió— éste puede atacar la determinación de causa probable y producir prueba en contrario a su presunción de corrección. *Rabell Martínez v. Tribunal Superior*, supra, pág. 799; *Vázquez Rosado v. Tribunal Superior*, supra, págs. 594-595; *Pueblo v. Tribunal Superior*, 104 D.P.R. 454, 459-460 (1975). Para ello, el mecanismo procesal es una moción de desestimación, al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, con el fin de demostrar que existe *ausencia total de prueba* en cuanto a la probabilidad de que se haya cometido el delito imputado —que no hay prueba sobre uno o todos los elementos del delito— o sobre la conexión del acusado con el delito *imputado. Vázquez Rosado v. Tribunal Superior*, supra, págs. 594-595; *Pueblo v. Tribunal Superior*, supra; *Pueblo v. González Pagán*, supra.

■ El análisis adecuado, para resolver una moción de desestimación al amparo de dicha regla, requiere examinar la prueba de cargo y defensa vertida en la vista preliminar y

la producida por el imputado durante la vista de desestimación. A la luz de los elementos del delito imputado el juzgador debe determinar si tal prueba establece *la probabilidad* de que estén presentes *todos* los elementos, a saber, la probabilidad de que se haya cometido tal delito imputado. Concomitante a dicho examen, debe determinar si hay prueba que *probablemente* conecte al imputado con el delito probablemente cometido.[2]

■ El hecho de que a juicio del magistrado la prueba sometida demuestre, con igual probabilidad, la comisión de un delito distinto al imputado, no debe dar fundamento a la desestimación. Sólo en ausencia *total* de prueba sobre la probabilidad de que estén presentes y probados uno, varios o *todos* los elementos del delito imputado o *la conexión del imputado con tal delito*, procede decretar la desestimación de la acusación presentada contra el solicitante.

## II

Aclarada la función del juzgador en esta etapa de los procedimientos, examinemos la prueba que tuvo ante sí el foro de instancia al desestimar la *acusación* por asesinato en segundo grado. Un resumen de los hechos surge de las dos (2) declaraciones juradas de las dos (2) testigos de cargo en la vista preliminar, que fueron presentadas por el acusado en apoyo de su escrito de mostración de causa.

Dichas declaraciones tienden a establecer que la noche del 3 de mayo de 1986 el acusado Rivera Alicea c/p "Papo" se encontraba en el Bar Alicea, sito en el Barrio Cataño de Humacao. En el mismo lugar se encontraba Máximo Rivera Gómez c/p "Zurdo" tomando unos tragos de "wisky" con leche.

---

[2] En cuanto al *quantum* de prueba necesario para una determinación afirmativa de causa probable, véase *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985).

En cierto momento "Papo" comenzó a molestar a las damas que allí trabajaban, por lo que la dueña del local, Providencia Alicea c/p "Doña Provi", le solicitó al "Zurdo" que sacara a "Papo" del negocio. En ese momento ya era la madrugada del 4 de mayo. El "Zurdo" se levantó del lugar donde estaba sentado y fue donde "Papo" y le dijo que se saliera de la barra porque no podía continuar allí. "Papo" le contestó "que allí no había más macho que nadie y que él no se iba a salir" del local. En ese momento el "Zurdo" lo agarró por el brazo y lo empujó *fuera del negocio*. "Papo" cayó de espalda en la acera, entre el negocio y la casa de "Doña Provi". Rápidamente "Papo" se incorporó del suelo y, sin mediar palabras, sacó una pistola de su bolsillo y le hizo un disparo en la cara a "Zurdo", que había salido tras él en ese momento.

Las testigos oyeron tres (3) disparos antes de ver caer al "Zurdo" de espalda en la acera con el rostro ensangrentado.

De los tres (3) disparos sólo uno (1) alcanzó a la víctima. A causa de ese disparo la víctima murió por severo trauma cráneo-cerebral y facial.

De la prueba presentada no surge que en las afueras de la barra hubiera alguna discusión ni gestos con las manos entre "Zurdo" y "Papo". Allí estaban ellos dos (2) solos.

Lo expuesto demuestra que el foro de instancia no estaba ante una situación *de ausencia total de prueba* que le permitiera sostener la desestimación decretada en la acusación por el delito de asesinato en segundo grado.

### III

■ El asesinato constituye un solo delito —dar muerte a un ser humano con malicia premeditada, Art. 82 del Código Penal, 33 L.P.R.A. sec. 4001— que se divide en grados en atención a la *perversidad* demostrada por el acusado al cometer el acto y al sólo efecto de la imposición de la pena. *Pueblo v. Ortiz*, 62 D.P.R. 258 (1943); *Pueblo v. Colón*, 65 D.P.R. 760 (1946).

La configuración del asesinato en segundo grado trata de la muerte ocasionada con malicia premeditada pero sin mediar deliberación. Art. 83 del Código Penal, 33 L.P.R.A. sec. 4002. Véanse, además: *Pueblo v. Gómez Nazario*, 121 D.P.R. 66 (1988); *Pueblo v. Blanco*, 77 D.P.R. 767 (1954). El concepto de malicia premeditada implica la ausencia de justa causa o excusa al ocasionar la muerte e implica, además, la existencia de la intención de ocasionar la muerte de un semejante. *Pueblo v. Méndez*, 74 D.P.R. 913, 921 (1953). La intención de ocasionar la muerte se puede manifestar al realizar un acto o al producir un grave daño corporal, cuya consecuencia probable sea la muerte de la persona. *Pueblo v. Méndez*, supra, pág. 922.

Por ello, la malicia premeditada debe ser determinada a base de los hechos, los actos y las circunstancias que rodean la muerte, la capacidad mental, la motivación, las manifestaciones y la conducta del acusado. Art. 14 del Código Penal, 33 L.P.R.A. sec. 3061. Véanse, además: *Pueblo v. Gómez Nazario*, supra; D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 138.

Atacar con un arma a una persona desarmada es una actuación de la cual puede inferirse la intención de causar la muerte a dicha persona. En tales circunstancias, ello *podría ser* la consecuencia probable de tal acto. *Cf. Pueblo v. Martínez Padró*, 91 D.P.R. 536 (1964); *Pueblo v. Colón Soto*, 109 D.P.R. 545 (1980); *Pueblo v. Betancourt Asencio*, 110 D.P.R. 510 (1980); *Pueblo v. Castro García*, 110 D.P.R. 644 (1981). Mas aún si a la víctima se le dispara en más de una ocasión, a corta distancia y alcanzándola en la cara. El riesgo de muerte era sustancial. *Cf. Pueblo v. Cruz*, 49 D.P.R. 653 (1936).

Además, la prueba no revela que estando "Papo" fuera del negocio hubo allí pelea, discusión, *provocación* o gestos

con las manos que hicieran pensar que la víctima continuaría agrediendo al acusado. *Cf. Pueblo v. López Rodríguez*, 101 D.P.R. 897 (1974).

█ El acusado sostiene que la prueba de cargo no demuestra el elemento de malicia premeditada, sino que actuó movido por un *arrebato de cólera* y *súbita pendencia*, por lo que la determinación de causa probable debía ser por el delito de homicidio. Destaca que la víctima era más alta y gruesa que el acusado para justificar la utilización del arma de fuego.

El delito de homicidio lo configura la muerte ocasionada por una súbita pendencia o arrebato de cólera. Art. 85 del Código Penal, 33 L.P.R.A. sec. 4004. Como expresamos en *Pueblo v. Cruz Correa*, 121 D.P.R. 270 (1988), citando con aprobación la obra *Código Penal de Puerto Rico: revisado y comentado*, supra, págs. 144–145, de la Prof. Dora Nevares-Muñiz:

> Los elementos del delito son: dar muerte a un ser humano, a consecuencia de una pendencia súbita o de un arrebato de cólera, causado por una provocación adecuada de parte de la víctima. *Pueblo v. Sulman*, 103 D.P.R. 429 (1975). Se trata de un acto intencional e ilegal que causa una muerte, pero por existir circunstancias atenuantes la calificación del delito y la pena varían para beneficio del acusado. La circunstancia atenuante consiste de que el acto del acusado fue una reacción irreflexiva, pasional, súbita e inmediata, provocada por la víctima u otra persona actuando con ésta. *Pueblo v. Castro García*, 110 DPR 644, 647 (1981) (sentencia) (Rigau, disidente).
>
> El homicidio presupone una persona ordinaria que por la cólera, pendencia, o emoción violenta y súbita, causada por una provocación adecuada, pierde el equilibrio y dominio de sí misma. Se excluye, por tanto, al ebrio, al adicto y al loco. *Pueblo v. Belmonte Colón*, 106 DPR 82 (1977).
>
> En la modalidad del homicidio por arrebato de cólera se requiere una provocación capaz de lograr una reacción violenta, intencional, pero no calculada, ni preconcebida, en el

hombre prudente y razonable. En cambio, en la modalidad de la súbita pendencia, al remitir a su origen histórico de pelea súbita, no reflexiva ni premeditada, no necesariamente requiere una provocación previa. Basta demostrar la existencia de una pelea súbita, a la cual se entra sin la intención previa de matar o de causar grave daño corporal. Véase LA FAVE & SCOTT, 574; PERKINS & BOYCE, 88–91; *Pueblo v. Gelpí*, 63 DPR 517 (1944); *Pueblo v. González Ruiz*, 90 DPR 580 (1964); *Pueblo v. González Colón*, 110 DPR 812 (1981). (Énfasis suplido.)

■ Tanto en el homicidio como en el asesinato en segundo grado, la muerte ocasionada es intencional. Pero la existencia de esas "circunstancias atenuantes" (provocación adecuada de parte de la víctima, pendencia súbita o arrebato de cólera) en los hechos del caso es lo que diferencia el homicidio del asesinato en segundo grado a los fines de la calificación del delito y la pena.

■ En *Pueblo v. López Rodríguez*, supra, pág. 900, expresamos que la provocación susceptible de reducir "el delito de asesinato a homicidio voluntario tiene que ser aquella de tal naturaleza que haga perder el dominio de sí mismo a un hombre de temperamento corriente, obligándolo a actuar por el impulso producido por notable provocación, sin la debida reflexión, y sin formar un determinado propósito". (Énfasis suplido.) Véanse, además: *Pueblo v. Reyes Acevedo*, 100 D.P.R. 703, 707 (1972); *Pueblo v. Saltari*, 53 D.P.R. 893, 909–910 (1938).

La probabilidad de que se configurara el delito de homicidio, en las circunstancias antes señaladas, puede que sea igual a la probabilidad de que se configurara el delito de asesinato en segundo grado. De lo que no hay duda es que el récord no refleja *ausencia total de prueba del elemento de malicia premeditada,* que justificara la desestimación *de la acusación* en esta etapa de vista preliminar, *del delito de asesinato en segundo grado.*

A base del análisis antes enunciado, concluimos que la prueba desfilada por el Ministerio Público en la vista preliminar sostiene la determinación de causa probable por el delito de asesinato en segundo grado. Erró el foro de instancia al variar la determinación afirmativa de causa, en vista preliminar, por dicho delito.

Será el juzgador de hechos, juez o Jurado, en el juicio plenario quien dirima cualquier conflicto de probabilidades.

Por los fundamentos expuestos y por no estar ante un caso de "ausencia total de prueba", *Pueblo v. González Pagán*, supra, *se dictará sentencia revocatoria.*

El Juez Asociado Señor Rebollo López no intervino.