Brau Ramírez, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
I
El peticionario Edwin Carrillo Cruz recurre de una resolución emitida el 21 de agosto de 1998 por el Tribunal de Primera Instancia, Sala Superior de Humacao, en el procedimiento criminal presentado contra el peticionario ante dicho foro por violación al Art. 3.2 de la Ley Para la Prevención e Intervención con la Violencia Doméstica, 8 L.P.R.A. see. 632, por maltrato agravado. Mediante el dictamen en cuestión, el Tribunal denegó una moción de desestimación presentada por el peticionario al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(p).
Junto con su recurso, el peticionario ha presentado una moción solicitando la paralización de los procedimientos ante el Tribunal de Primera Instancia.
Denegamos.
II
Según se desprende del recurso, el peticionario fue denunciado por una violación al citado Art. 3.2 de la Ley Para la Prevención e Intervención con la Violencia Doméstica por hechos alegadamente cometidos el 29 de noviembre de 1997 en Fajardo, Puerto Rico, en la persona de Iris Gómez Jiménez, con quien el apelado supuestamente había convivido. Alegadamente, el peticionario agredió a la Sra. Gómez mediante un puño en la cara, ocasionándole hematomas. Además, la agredió con un machete en la palma de la mano, causándole una herida.
Luego de los trámites pertinentes, se celebró la vista preliminar. El Ministerio Público presentó como testigo a la Sra. Gómez.
La Sra. Gómez declaró que era profesora de matemática en una institución universitaria privada. Que la noche que ocurrieron los hechos ella en unión a su amiga, Casandra Martínez Muñoz, una prima de la testigo y su esposo se encontraban compartiendo en el Hotel Travelodge de Isla Verde. En dicho lugar hay música y se baila.
Esa noche vio al peticionario, con quien dijo había tenido una "relación sentimental". El peticionario se le acercó y le dijo algo al oído que ella no pudo escuchar porque la música estaba alta. Posteriormente él se alejó y ella creía que él se había ido. Estaba mirando hacia afuera cuando lo vio subir y él se paró en una esquina del salón mirando hacia donde ella estaba.
*841 En eso, un muchacho con quien ella había compartido anteriormente la sacó a bailar y el peticionario los interrumpió diciéndole "no te atrevas a bailar con ningún hombre". El muchacho se alejó del lugar.
La testigo habló entonces con el agente de seguridad del hotel, quien en unión al gerente fueron donde estaba el peticionario y lo sacaron del lugar. La testigo se quedó en el lugar con las personas que la acompañaban y posteriormente regresó a su casa.
Declaró que hacía un tiempo ella había conocido al peticionario en ese mismo lugar y que la relación que había entre ellos había terminado porque ella se enteró de que él se encontraba en probatoria por unos delitos. En una ocasión él le había pedido reanudar la amistad y ella se había negado. Esos eventos ocurrieron antes del incidente que estaba narrando.
Abandonaron el Travelodge y la testigo se dirigió a su hogar en compañía de su amiga Casandra. Previamente, ella había decidido pasar la noche en casa de Casandra, por lo que fueron a la casa de la testigo a recoger unos artículos personales.
Mientras iban de camino para casa de Casandra, el peticionario las interceptó con un vehículo de motor y se bajó con un machete. Casandra trató de subir el cristal y el peticionario le dio un "planazo" con el machete al cristal y lo rompió. Casandra sufrió una cortadura en su mano, por lo que después lo acusaron de tentativa de asesinato y violación al Art. 4 de la Ley de Armas.
A ella el peticionario le ordenó bajarse del vehículo donde viajaba y montarse en el vehículo de él, lo que ella hizo. De ahí continuaron la marcha, dejando a Casandra en el carro.
El peticionario lucía en ocasiones frenético, furioso y en otras ocasiones bajaba el tono de voz y se calmaba y luego decía a la testigo que volviera con él. Ella se limitaba a perdirle de diversas maneras que detuviera el vehículo y la dejara ir. En algunas ocasiones él se mostraba airado, frenético con la actitud de ella y en otras ocasiones, bajaba la guardia y se tranquilizaba.
Mientras esto ocurría, Casandra le avisó a la Policía. La Policía los localizó en una carretera cerca de la Carretera Estatal Núm. 3. Cuando el peticionario se dio cuenta que la Policía lo seguía, emprendió la marcha hacia San Juan. Fue perseguido por la Policía todo el camino desde Fajardo hasta San Juan, donde finalmente tuvo un accidente de tránsito y fue arrestado.
A base de la prueba desfilada, el Tribunal determinó que existía causa probable para acusar al peticionario por el delito imputado. El Ministerio Público procedió a presentar la acusación correspondiente.
Luego de otros trámites, el peticionario presentó una moción de desestimación al amparo de la Regla 64(p) de las de Procedimiento Criminal. Alegó que de la prueba desfilada no se desprendía que el peticionario hubiese tenido una relación de convivencia con la perjudicada, según requerido por la Ley.
El Ministerio Público se opuso a la moción del peticionario.
El Tribunal celebró una vista para adjudicar la moción del peticionario, admitiéndose una grabación de la prueba desfilada en la vista preliminar. El 21 de agosto de 1998, mediante la resolución recurrida, el Tribunal denegó la moción del peticionario. El Tribunal concluyó que el testimonio de la Sra. Gómez resultaba suficiente para sostener la determinación de causa probable, expresando:
A preguntas del Fiscal la testigo de sus propias palabras expresa lo siguiente: "que mantuvo una relación sentimental", "que ya no era real", "que ya no estaban juntos", "que se habían separado", "que yo terminé con él", "que yo lo había dejado", "que yo no quería estar con él", "que él no entendía que yo no quería estar con él".
Según se desarrolló su testimonio resalta un "tuteo" entre ella y el acusado, surge un requerimiento económico entre ellos y expresiones en el sentido de que en momentos del incidente ella lograba *842 calmarlo y que él volvía a agitarse.
La consignación de hechos antes relatados nos lleva a concluir que la relación entre víctima y victimario no era una relación meramente sentimental; por el contrario, era una relación consensual. Actuó correctamente la Magistrado en vista preliminar y la determinación se ajustó a derecho.
El peticionario solicitó reconsideración de este dictamen, la que fue denegada por el Tribunal el 17 de septiembre de 1998.
Insatisfecho, el peticionario acudió ante este Tribunal.
III
O 2. Os o Cu § O erq £ o o •G "O S 2 o a 'o 9< 'S i 41 c d;s 2 a p S o S <u -5 o, o W O-* £3 O CO O C
La Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(p), permite a un imputado solicitar la desestimación de un procedimiento por el fundamento de que "se ha presentado contra éste una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho."
Presentada la moción al amparo de la Regla 64(p), el tribunal de instancia puede, en el ejercicio de su discreción, celebrar una vista para entender y recibir prueba, o puede rechazarla de plano si de su faz y de las constancias en el expediente del caso, no resulta meritoria. Pueblo v. Rodríguez Ríos, _ D.P.R. _ (1994), 94 J.T.S. 106, a la pág. 45; El Vocero de Puerto Rico v. E.L.A., _ D.P.R. _ (1992), 92 J.T.S. 108, a la pág. 9,845; Pueblo v. Tribunal Superior, 104 D.P.R. 454, 459-460 (1975).
El propósito de la vista preliminar bajo la Regla 23 de las de Procedimiento Criminal es evitar que se someta a un ciudadano arbitraria e injustificadamente a los rigores de un proceso criminal. Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 663 (1985); Pueblo v. Opio Opio, 104 D.P.R. 167, 171 (1975). Dicho procedimiento opera en términos de probabilidades. Su fruición no es establecer la culpabilidad o inocencia del acusado, lo que está reservado a la etapa del juicio, sino determinar si el Estado tiene una adecuada justificación para continuar con un proceso judicial. Pueblo v. Andaluz Méndez, _ D.P.R. _ (1997), 97 J.T.S. 107, a la pág. 1,294; Pueblo v. González Pagan, 120 D.P.R. 684, 687 (1988).
El Ministerio Público debe presentar evidencia sobre los elementos del delito imputado en la denuncia y su conexión con el imputado. Pueblo v. Rodríguez Aponte, 116 D.P.R. a la pág. 664.
La determinación de causa probable, como todo dictamen judicial, goza de una presunción de corrección. Pueblo v. Rodríguez Aponte, 116 D.P.R. a la pág. 664; Rabell v. Tribunal, 101 D.P.R. 796, 799 (1973).
El imputado puede atacar la determinación de causa probable luego de presentada la acusación a través de una moción de desestimación al amparo de la Regla 64(p) de las de Procedimiento Criminal. El estándar para revisar la determinación de causa probable, sin embargo, es limitado. El Tribunal Supremo de Puerto Rico ha resuelto que sólo procede decretar la desestimación de un acusado por este fundamento cuando existe una ausencia total de prueba en cuanto a la probabilidad de que se haya cometido el delito imputado o sobre la conexión del acusado con el delito imputado. Pueblo v. Andaluz Méndez, 97 J.T.S. a las págs. 1,293-94; Pueblo v. Rivera Alicea, 125 D.P.R. 37, 42 (1989); Vázquez Rosado v. Tribunal Superior, 100 D.P.R. 592, 594-595 (1972).
En el presente caso, el Tribunal entendió que existía prueba suficiente para acusar al peticionario por una infracción al Art. 3.2 de la Ley Para la Prevención e Intervención con la Violencia Doméstica, 8 L.P.R.A. see. 632, por maltrato agravado.
El Artículo 3.1 de la Ley define el delito de maltrato:

*843
"Toda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviera o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona,... o para, causarle grave daño emocional, será sancionada con pena de reclusión por un término fijo de doce (12) meses, excepto que de mediar circunstancias atenuantes se podrá reducir a un término no menor de nueve (9) meses y de mediar circunstancias agravantes podrá aumentarse hasta dieciocho (18) meses."

8 L.P.R.A. see. 631.
El Art. 3.2 de la Ley establece, como modalidad agravada del delito, la comisión de los hechos descritos en el Art. 3.1 entre una pareja que goce de una relación del tipo descrito en dicho precepto cuando, además, entre otras circunstancias, "se infringiere grave daño corporal a la persona" o "se cometiere con arma mortífera en circunstancias que no revistiesen la intención de matar o mutilar". En estos casos, la pena fija es de tres (3) años, la que puede ser aumentada hasta un máximo de cinco (5) años, en caso de mediar circunstancias agravantes; de mediar circunstancias atenuantes podrá ser reducida hasta un mínimo de dos (2) años. 8 L.P.R.A. see. 632.
De acuerdo al texto citado, el precepto protege a varias categorías de personas: (1) al cónyuge, (2) ex cónyuge, (3) a la persona con quien cohabita o haya cohabitado el acusado, (4) a la persona con quien el acusado sostuviere o haya sostenido una relación consensual, (5) a la persona con quien el acusado haya procreado un hijo o hija.
En la situación de autos, el texto de la denuncia imputaba que el peticionario había convivido con la Sra. Gómez Jiménez. El peticionario alega que no se presentó prueba suficiente para establecer dicha relación.
Lo cierto es que, según observara la Sala recurrida, el testimonio de la Sra. Gómez tendió a establecer la existencia de una "relación sentimental" entre ella y el peticionario, haciendo alusión dicha testigo a que "ya no estaban juntos" y a otras circunstancias que tendían a apuntar a la naturaleza íntima de la relación en cuestión.
Definitivamente, el lenguaje utilizado por la declarante para caracterizar su relación fue impreciso y eufemístico. Ello posiblemente resulta común cuando las personas se ven obligadas a declarar sobre este tipo de temas. Coincidimos, no obstante, con la distinguida Sala recurrida en tomo a que, a la luz del estándar legal aplicable, no puede concluirse que exista una ausencia total de prueba sobre este elemento de una "relación consensual" entre el recurrido y la perjudicada. Pueblo v. Andaluz, 97 J.T.S. a las págs. 1,293-94; Pueblo v. Rivera Alicea, 125 D.P.R. a la pág. 42; Vázquez Rosado v. Tribunal Superior, 100 D.P.R. a las págs. 594-595.
Cabe señalar que, entre las otras categorías enumeradas, el precepto en cuestión es aplicable a toda persona "con quien se sostiene o haya sostenido una relación consensual". 8 L.P.R.A. see. 632; véase, además, 8 L.P.R.A. see. 602, subinciso (i) (definiendo "relación de pareja" como, entre otros casos, aquella "entre... las personas que sostienen o han sostenido una relación consensual íntima..."). A nuestro juicio, la prueba desfilada en la vista preliminar, cuando menos, sostendría una acusación bajo dicha modalidad.
En estas circunstancias, procede denegar el auto solicitado.
La decisión anterior, desde luego, en modo alguno prejuzga la determinación que pudiera hacerse sobre esta cuestión durante el juicio en sus méritos de la controversia, cuando el Estado vengg obligado a establecer los elementos del delito más allá de duda razonable. En esta etapa, sin embargo, estimamos que la desestimación de la causa resultaba improcedente.
Por los fundamentos expresados, se deniega el auto solicitado, así también el auxilio de jurisdicción. Notifíquese por teléfono y vía facsímil, además de por la vía ordinaria.
*844 Lo pronunció el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General