# 2002 DTA 95

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VI - CAGUAS/HUMACAO/GUAYAMA**

EL PUEBLO DE PUERTO RICO
Apelado

v.

ANGEL DELGADO PEREZ
Apelante

KLAN-01-01159

San Juan, Puerto Rico, a 8 de mayo de 2002

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Rodríguez García y Salas Soler

Salas Soler, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece la Sociedad para Asistencia Legal en representación de Angel Delgado Pérez (Delgado) en el interés de obtener la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante dicha sentencia, Delgado fue declarado culpable de infringir el Art. 3.2 (c) de la Ley Núm. 54 del 15 de agosto de 1989, mejor conocida como Ley para la Prevención e Intervención con la Violencia Doméstica, en su modalidad de maltrato agravado, imponiéndole una pena de tres (3) años de reclusión.

El agravante del delito se estableció porque Delgado agredió a la víctima con un cuchillo y un palo de madera. Aunque el Ministerio Público presentó también acusación por infracción al Art. 4 de la Ley de Armas, el

Jurado emitió veredicto de no culpable por este cargo. Siendo ello así, la Defensa argumenta que la convicción por la Ley 54, en su modalidad grave, no puede prosperar sin la correspondiente convicción por el cargo de la Ley de Armas, y por ende, el veredicto es nulo o ilegal.

Debido a que un veredicto inconsistente no constituye un error que de lugar a la revocación de una sentencia, se confirma la sentencia apelada.

## HECHOS

El 27 de febrero de 2001, Carmen Delgado González (Carmen) se encontraba en su cuarto con dos de sus cinco hijos, José y Adrian, ambos menores de edad. Carmen testificó que a eso de la 1:30 de la madrugada, su esposo Angel Delgado Pérez (Delgado) entró al cuarto y le puso un puñal en el cuello mientras le decía: *"canto de hija de la gran p..., ahora es que tu quieres ir a la iglesia, ahora vas a ir pal' ca..., llama al pastor para ver si te va a ayudar"*. Delgado, de inmediato alzó el puñal y Carmen le aguantó la mano, pero, con el cabo le agredió la frente. También, testificó que éste le dio con un palo en el pecho. Carmen pudo escaparse y se dirigió a casa de sus suegros; de allí llamó a la Policía. (Declaración Jurada Núm. 620, Exhibit 1.) Delgado, quien hacía dos años que no vivía en la casa, fue esposo de Carmen por 15 años, y es el padre de sus cinco hijos.

La agente investigadora, María Figueroa Ayala, declaró que a raíz de una llamada recibida por el *"911"*, acudió al lugar de los hechos a investigar en compañía de otros dos agentes. (Página 6 a la 8 de la Exposición Narrativa de la Prueba Estipulada.) Al llegar al lugar encontró a un jovencito flaco, blanco, de pelo corto, quien le dijo que de allí los habían llamado y que su mamá estaba en la casa de sus abuelos. La agente identificó al menor como José. Declaró que acto seguido le pidió a éste que llamase a su mamá y Carmen salió bañada en sangre. La agente le tomó fotografías a Carmen, y decidió llevarla al hospital. El joven José le indicó que su papá se encontraba en la otra casa con sus otros hermanos, y que tenía un palo y un cuchillo. Posteriormente, la agente acudió a la otra casa y de allí salieron cuatro niños llorosos, nerviosos y agitados. También, la agente tomó fotografías de la escena; sin embargo, no se ocupó ningún cuchillo u otro objeto.

Por los hechos narrados, se presentaron denuncias contra Delgado por los delitos de: maltrato agravado, Art. 3.2 de la Ley Núm. 54 del 15 de agosto de 1989, según enmendada, mejor conocida como Ley para la Prevención e Intervención con la Violencia Doméstica, 8 L.P.R.A. Sec. 632 (c); portar un arma de las comúnmente conocidas como puñal, Art. 4 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. Sec. 414; y por el delito de maltrato contra menores, Art. 52 de la Ley para el Amparo de Menores en el Siglo XX, 8 L.P.R.A. Sec. 443q. En la Vista Preliminar no se determinó causa probable para acusar por este último delito, pero sí por maltrato agravado. El cargo por la infracción a la Ley de Armas, por estar tipificado como delito menos grave, no se discutió en dicha vista.

Durante el juicio por jurado, tanto la Defensa como el Ministerio Público estipularon el patrón de conducta agresiva alegado en la acusación. Esto, debido a que anteriormente Delgado se había declarado culpable en otro caso por infracción a la Ley 54 contra la misma perjudicada. La Defensa, amparada en el caso *Old Chief v. US*, 117 Supreme Court 644 (1997), señaló que, estipuló el patrón de conducta y la reincidencia para prevenir causar perjuicio indebido y evitar que esta información llegara al jurado.

El Ministerio Público se opuso. El Juez decidió que las instrucciones al jurado serían a los efectos que podían tomar como concluyente que ese elemento (patrón de conducta) quedó probado, y que el Fiscal y la Defensa así lo habían estipulado. Ante esta decisión, la Defensa dejó plasmada la objeción de que no estaba conforme con que esa información llegara al jurado por los fundamentos antes mencionados. Sin embargo, se mantuvo la instrucción a ser dada al jurado sobre el patrón de conducta.

El primer testigo del Ministerio Público, lo fue Carmen. (Desde la página 2 hasta la 6 de la Exposición

Narrativa de la Prueba Estipulada). Identificó al acusado y declaró conocerlo por ser éste su esposo durante quince años. Declaró tener cinco hijos con el acusado de las edades de 16, 14, 10, 9 y 6 años. Carmen le solicitó al Juez querer manifestar algo, pero éste le informó que cualquier cosa que quiera decir, la Fiscal le preguntará. Durante el interrogatorio, Carmen relató los hechos de su maltrato. A preguntas de la Fiscal de si recordaba haber prestado una declaración jurada, Carmen manifestó que sí, y que también se acordaba haberle dicho al Juez el primer día que no quería seguir con el caso.

Posteriormente, el interrogatorio se enfocó en los objetos con que Carmen fue agredida. La Fiscal inquirió si Delgado tenía alguna otra cosa en sus manos mientras le ponía el puñal; Carmen contestó que no se acordaba. Cuando se le preguntó sobre el contenido de la declaración jurada, Carmen contestó que el acusado tenía un palo de madera, pero que no recordaba qué hacía con el palo. Luego de revisar la declaración, dijo que le pegaba en el pecho con el palo, pero que no se acordaba de qué tamaño era, ni cómo era el cuchillo. Carmen tampoco recordó porqué llamó a la policía.

A preguntas de la Fiscal de cómo se sintió como mujer y madre en el momento cuando Delgado le puso el puñal en el cuello delante de sus hijos, Carmen manifestó que no se acordaba. La Fiscal le preguntó que porqué tenía lágrimas y Carmen contestó que, desde un principio, había dicho que no quería seguir con el caso. Se le preguntó si no se acordaba haber tenido incidentes anteriores, Carmen dijo que se negaba a contestar esa pregunta. La Fiscal solicitó auxilio del Tribunal. El Juez le explicó a Carmen que el Estado podía presentar la declaración jurada como sustituto, independientemente de que ella se negara a contestar.

La Fiscal solicitó que se admitiera en evidencia la declaración jurada a tenor con la Regla 65 de las de Evidencia, a lo que la Defensa objetó. Se solicitó que se excusara al jurado de sala para dirimir el asunto conforme a la Regla 9 de Evidencia. El Juez ordenó que, para mostrársela al jurado, se editara la declaración jurada. De esta manera, se admitió en evidencia como prueba sustantiva la parte donde Carmen declaró que habían sucedido otros incidentes de maltrato, ya que ella recordó el resto de la declaración.

Luego, le presentaron varias fotos a Carmen; ésta dijo que no se acordaba si se las habían tomado, pero que la de la foto se parecía a ella. Las fotos contienen lo siguiente:

*"1) el rostro de una mujer con sangre en el lado izquierdo, encima de la ceja izquierda, en la boca, en la nariz y entre ceja. También, un hematoma hinchado en forma cilíndrica, que atraviesa desde la parte superior de la frente hasta la parte interior del ojo izquierdo. [Exhibit 3-A.]*

*2) La misma mujer, pero de perfil izquierdo, con sangre en el rostro desde el nivel de la oreja hacia abajo. [Exhibit 3-B.]*

*3) Un cuarto desordenado con una cama de una plaza. [Exhibit 2-B.]*

*4) La misma cama, pero enfocando en las sábanas y un cojín, manchados con lo que aparenta ser sangre. [Exhibit 2-A.]"*

El segundo testigo del Ministerio Público fue la agente María Figueroa Ayala. (Desde la página 6 hasta la 8 de la Exposición Narrativa de la Prueba Estipulada.) Declaró que cumplía cinco años en la Policía de Puerto Rico y que ha recibido varios adiestramientos, tanto en la Academia como durante sus estudios en Justicia Criminal. También, que recibió un adiestramiento de una semana sobre la Ley 54. Que durante esos entrenamientos, a ella le enseñaron que en los casos de Ley 54, ella tenía el deber de realizar unos informes. Que en su experiencia, ella había realizado -aproximadamente- como cien de esos informes. Posteriormente, la agente fue interrogada sobre el caso. Añadió que, en un momento dado, tuvo que abandonar la escena para buscar la cámara al cuartel, y que en el ínterin, no sabe qué pudo suceder en el lugar de los hechos.

Que le tomó las fotos a la perjudicada antes de que recibiera atención médica. Que luego de llevar a la perjudicada al hospital, regresó al lugar de los hechos. Allí tomó las fotografías de la escena. Que conforme a su experiencia, cuando se alega la comisión de un delito con cuchillo o con un palo, es sumamente importante la aparición de ese cuchillo. Sin embargo, que tanto ella como sus compañeros buscaron el alegado cuchillo y palo, y nunca lo encontraron.

El tercer y último testigo del Ministerio Público fue José Estrada Delgado. (Desde la página 8 hasta la 9 de la Exposición Narrativa de la Prueba Estipulada.) Declaró que tenía quince años, y conocía a Carmen y a Delgado por ser su mamá y papá. José preguntó si tenía que declarar en contra de su papá, ya que no quería hacerlo y no quería continuar con el caso. Por tanto, el Juez instruyó al testigo, y le hizo las advertencias de que podía cometer perjurio si cambiaba la declaración que había prestado anteriormente. Siendo ello así, testificó que el día de los hechos se encontraba en su casa con su madre y su hermano. Que en horas de la noche escuchó que estaban abriendo la puerta y luego entró su papá con un palo y un puñal. Que su papá comenzó a hablarle malo a su mamá y se le lanzó encima. Luego, vio a su mamá con sangre en la frente y ésta salió de la casa y se dirigió a casa de su abuelo. Al cabo de un rato, llegó la Policía; pusieron bajo arresto a su papá y se lo llevaron junto a su mamá para el hospital.

Desfilada la Prueba, el Juez instruyó al jurado. Una de las instrucciones especiales fue sobre el delito de maltrato en su modalidad simple. También, el Juez explicó que si encontraban probados los cargos, más allá de duda razonable, debían encontrar a Delgado culpable de los delitos imputados. El jurado rindió un veredicto de culpabilidad por el delito de maltrato agravado, y absolvió a Delgado del delito de portar el puñal. El Juez aceptó el veredicto y emitió el fallo de culpabilidad. Previo al acto de dictar sentencia, la Defensa presentó Moción a tenor con el debido proceso de ley.

En síntesis, sostuvo que no procedía el fallo de culpabilidad por el delito de maltrato agravado, cuya circunstancia agravante es la utilización de una arma mortífera, pues fue absuelto por el jurado del delito de portar un arma blanca. Por lo tanto, adujo que el Juez estaba obligado a instruir al jurado para que reconsiderase el veredicto de culpabilidad rendido, por lo que el fallo dictado por el Juez era nulo. El Ministerio Público presentó escrito en oposición. Alegó que se trata de veredictos inconsistentes por parte del jurado, el cual atempera la ley a su propio sentido de justicia.

Delgado fue sentenciado a tres años de reclusión. Inconforme, a través de la Sociedad para la Asistencia Legal, presentó el recurso de apelación que nos ocupa. El mismo quedó perfeccionado con la presentación de la Exposición Narrativa de la Prueba Estipulada. Delgado argumenta que erró el foro de instancia en lo siguiente:

*"PRIMER SEÑALAMIENTO DE ERROR*

*Erró el Honorable Juez que presidía al aceptar y validar un veredicto contrario a derecho o nulo.*

*SEGUNDO SEÑALAMIENTO DE ERROR*

*Erró el Jurado al rendir un veredicto de culpabilidad con una prueba que no derrotó la presunción de inocencia no demostró la culpabilidad del acusado más allá de duda razonable."*

Posteriormente, le concedimos término a la Oficina del Procurador General para que se expresara respecto a la procedencia y méritos del recurso instado. Dicha parte ha comparecido. Nos encontramos en posición de resolver.

## EXPOSICION Y ANALISIS

El apelante argumenta que el veredicto rendido por el jurado no es válido debido a que la prueba no derrotó su presunción de inocencia, ni demostró su culpabilidad más allá de duda razonable. Examinemos, pues, cómo se podría configurar el delito de maltrato agravado según la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 L.P.R.A. Sec. 632 (c). La sección 632, tipifica el delito de la siguiente manera:

*"632. Maltrato agravado*

*Se impondrá pena de reclusión por un término fijo de tres (3) años cuando en la persona del cónyuge, ex-cónyuge o de la persona con quien se cohabita o se haya cohabitado, o con quien se sostiene o haya sostenido una relación consensual, o con quien se haya procreado un hijo o hija, si se incurriere en maltrato según tipificado en este capítulo, mediando una o más de las circunstancias siguientes:*

*(a) Se penetre en la morada de la persona o en el lugar donde esté albergada y se cometiere allí maltrato, en el caso de cónyuges o cohabitantes cuando éstos estuvieren separados o mediare una orden de protección ordenando el desalojo de la residencia a una de las partes; o*

*(b) cuando se infiere grave daño corporal a la persona; o*

*(c) cuando se cometiere con arma mortífera en circunstancias que no revistiesen la intención de matar o mutilar; o*

*(d) cuando se cometiere en la presencia de menores de edad; o*

*[...]".*

Según los hechos del caso, Delgado infringió el inciso (a) de esta sección de la Ley, porque el maltrato lo cometió de madrugada en el cuarto de la perjudicada, y él ya no convivía con ella. También infringió, según los hechos, el inciso (d) porque maltrató a la perjudicada frente a sus hijos, quienes son todos menores de edad. De otro modo, la acusación fue por el inciso (c) debido a que en la Declaración Jurada, Carmen relató cómo su esposo la maltrató con un cuchillo en una mano y un palo en la otra.

El jurado, por un lado encontró culpable a Delgado de maltrato agravado, y por otro, lo absolvió de la acusación por el Art. 4 de la Ley de Armas, 25 L.P.R.A. Sec. 414. El apelante sostiene que el Ministerio Público no alegó ninguno de los demás agravantes contenidos en el Art. 3.2 de la Ley 54, *supra*. De esta manera, argumenta en su escrito que ambos veredictos son irreconciliables.

Anteriormente, el Tribunal Supremo ha expresado que no es necesario demostrar consistencia lógica cuando un jurado emite veredictos de culpabilidad en cuanto a unos cargos, y veredictos de no culpabilidad en cuanto a otros, por lo cual los veredictos inconsistentes son válidos. Por lo tanto, no constituye un error que de lugar a revocación, el hecho de que un jurado emita veredictos que no guarden consistencia lógica entre sí respecto a diferentes pliegos acusatorios. *Pueblo v. Gómez Nazario*, 121 D.P.R. 66, 75 (1988).

Sobre este tema, el profesor Ernesto L. Chiesa Aponte, en su texto: *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. II, Ed. Forum, Bogotá, 1992, señala al respecto:

*"Se trata de un mal necesario, pues la alternativa de respetar el imperio de la lógica llevaría, de ordinario, a la anulación del veredicto de inocencia, lo que no es posible (constitucionalmente) ni deseable. El acusado que reclama lógica en los veredictos probablemente se encuentre en peor situación si prevalece la lógica jurídica. Hay que vivir con los veredictos inconsistentes, como un precio para mantener el derecho a juicio por jurado junto con el respeto a un veredicto absolutorio".* Ernesto L. Chiesa Aponte, *supra*, pág. 348.

En *Pueblo v. Medina Ocasio*, 98 D.P.R. 302 (1970), el Tribunal Supremo sostuvo un veredicto similar al del caso que nos ocupa. Explicó: *"Que el jurado en este caso haya declarado culpable al apelante del delito de acometimiento y agresión grave -delito cometido con una pistola-, y lo haya absuelto de la portación de armas, puede tener explicación o no, pero eso es la prerrogativa del jurado."* Supra, páginas 304-305.

Cierto es que, en el caso de autos, no se ocupó el puñal utilizado por el apelante para herir a la perjudicada, por lo que dicha arma no fue presentada en evidencia por el Ministerio Público. Sin embargo, se ha resuelto en lo relativo a la Ley de Armas que la presentación del arma en evidencia no es indispensable en casos de esta naturaleza, si existen otros elementos o circunstancias que demuestren que el acusado la portaba. *Pueblo v. Torres Nieves*, 105 D.P.R. 847 (1976). Entendemos, al igual que el jurado, que los testimonios vertidos durante el juicio y las fotos de la perjudicada, son prueba suficiente para establecer que el apelante agredió a la perjudicada con el puñal y con el palo.

De otra parte, en *Pueblo v. Cabán Torres*, 117 D.P.R. 641 (1986), el Tribunal Supremo reiteró que no intervendrá con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos en instancia, excepto en casos en que un análisis integral de dicha prueba cause insatisfacción o intranquilidad de conciencia tal que estremezca su sentido básico de justicia. Así mismo, este foro apelativo tampoco intervendrá con la apreciación de los testimonios de Carmen y su hijo que hiciese el jurado en este caso.

Ambos testigos relataron cómo Carmen fue agredida con un puñal y un palo. No hay nada en la apreciación de esta prueba que nos provoque insatisfacción o intranquilidad. Máxime cuando existe un patrón de conducta agresivo por parte de Delgado para con su esposa Carmen. La parte de la Declaración Jurada de Carmen que fue omitida durante el juicio para no causar perjuicio indebido ante el jurado dice, y citamos: *"... que no es la primera vez que sucede esta situación, la vez anterior me agredió en la cabeza con un martillo, marrón y un palo, que por poco pierdo la vida, el médico me indicó que estaba viva de milagro."* Ante tan tétrico cuadro lastimoso que presenta Carmen como víctima consuetudinaria de violencia doméstica, no logramos entender de qué se queja el agresor Delgado.

Por otro lado, la apreciación que hace un juzgador de la evidencia desfilada durante un proceso judicial criminal es una cuestión mixta de hecho y de derecho. Es así, por cuanto el análisis que de la prueba presentada se realiza *"pone en movimiento, además de la experiencia del juzgador, su conocimiento del derecho para así llegar a una solución justa de la controversia."* *Pueblo v. Cabán Torres*, supra. La credibilidad consiste en una asignación valorativa de certeza o probabilidad sobre una versión de los hechos o acometimientos incidentales al caso.

La norma en esta jurisdicción es que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, un foro apelativo no ha de intervenir con la apreciación y adjudicación de credibilidad que con relación a la prueba de los hechos hubiese realizado el juzgador a nivel de instancia. *Pueblo v. Melia León*, 143 D.P.R. 708 (1997). Corresponde, pues, al jurado o, en su defecto, al juez que presidió el proceso, dirimir los conflictos de prueba.

En los casos ventilados ante jurado, es éste el que viene llamado *"a ejercer este juicio valorativo sobre la totalidad de la prueba y para el mismo sólo se requiere valerse del sentido común, la lógica y la experiencia para deducir cuál de las versiones, si alguna, prevalece sobre las otras. Los criterios que guían la evaluación de la prueba en un juicio son idénticos a aquéllos que utilizamos en la vida cotidiana, tales como el comportamiento y el carácter de quienes dan su versión de los hechos, la parcialidad que puedan afectarles, la naturaleza de la declaración y otros. Por tanto, el juicio sobre la credibilidad de la prueba prescinde de conocimientos previos o especializados en derecho".* *Pueblo v. Colón Burgos*, 140 D.P.R. 564 (1996).

A la luz de los anteriores principios es que hemos examinado los expedientes originales, la exposición

narrativa de la prueba y los escritos de las partes. Estamos convencidos de que no existe pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba que hizo el jurado. Por el contrario, la prueba fue suficiente para establecer, más allá de duda razonable, el delito de maltrato agravado cometido por el apelante según imputado. Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General