ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>DAVID JUNIOR RODRÍGUEZ DE LEÓN<br><br>Apelante | KLAN202300562 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Crim. Núm. GVI2019G0014 DLA2019G0073<br><br>Sobre: ARTÍCULO 95 C. P. Y ARTÍCULO 5.15 LEY DE ARMAS |

Panel integrado por su presidente, el Juez Rivera Colón, la Jueza Díaz Rivera y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de octubre de 2024.

Mediante un recurso de apelación, comparece el señor David Junior Rodríguez de León (en adelante, señor Rodríguez de León o parte apelante), quien solicita revisemos la *Sentencia* emitida el 3 de mayo de 2023, por el Tribunal de Primera Instancia, Sala Superior de Guayama, (en adelante, TPI).[2] Mediante el referido dictamen, el TPI condenó a la parte apelante a cumplir consecutivamente en prisión una pena de once (11) años y tres (3) meses por el delito de Asesinato Atenuado, tipificado en el artículo 95 de la Ley Núm. 146-2012, 33 LPRA sec. 5144, también conocida como Código Penal de 2012, (en adelante, Código Penal), y siete (7) años por el delito de disparar o apuntar un arma de fuego codificado en el artículo 5.15 de la Ley Núm. 404-2000, 25 LPRA sec. 458n, nota Ed. 2016,

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución del Juez Eric R. Ronda del Toro.
[2] Apéndice I del Recurso de Apelación, pág. 1.

también conocida como la Ley de Armas (en adelante, Ley de Armas).[3]

A continuación, reseñamos el tracto procesal del caso y esbozamos la prueba documental y testifical desfilada en el juicio en su fondo.

*-I-*

Por hechos ocurridos el 17 de marzo de 2019, el Ministerio Público presentó dos (2) acusaciones contra el señor Rodríguez de León por violación al artículo 95 del Código Penal, *supra* y el artículo 5.15 Ley de Armas, *supra*. El 5 de diciembre de 2022 se celebró el acto de lectura de las acusaciones, al cual el señor Rodríguez de León compareció representado por abogado. Éste dio por leído los pliegos acusatorios e hizo alegación de no culpable. En lo atinente al presente caso, las alegaciones consignaron los siguiente:

**G VI2019G0014**

El referido imputado de delito, DAVID JUNIOR RODRÍGUEZ DE LEÓN, allá o para el 17 de marzo de 2019 y en Salinas, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Guayama, ilegal, voluntaria, criminal e intencionalmente, dio muerte al ser humano Carlos J. Correa Reyes, mediando súbita pendencia o arrebato de cólera. Consistentes dichos actos en que el imputado, utilizando un arma de fuego (Pistola, color negro y gris, marca Ruger, modelo P-95, calibre 9mm), le realizó varios disparos en diferentes partes del cuerpo al señor Carlos J. Correa Reyes, ocasionándole la muerte (Patología PAT-114819).
Hecho contrario a la ley.[4]

**G LA2019G0073**

El referido imputado de delito, DAVID JUNIOR RODRÍGUEZ DE LEÓN, allá o para el 17 de marzo de 2019 y en Salinas, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Guayama, ilegal, voluntaria, criminalmente, disparó un arma de fuego, Pistola, color negro y gris, marca Ruger, modelo P-95, calibre 9mm, contra el Sr. Carlos J. Correa Reyes, en un sitio público y/o en cualquier otro sitio donde alguna otra persona pudo sufrir daño, sin

---

[3] La Ley Núm. 404-2000, según enmendada, fue derogada en su totalidad por la Ley Núm. 168-2019, 25 LPRA sec. 461, también conocida como la Ley de Armas de Puerto Rico de 2020. Debido a que los hechos ocurrieron antes del 11 de diciembre de 2019, hacemos constar que es de aplicación la Ley Núm. 404-2000.
[4] Apéndice II-IV del Recurso de Apelación, págs. 3-5

ser este un caso en defensa propia y sin estar el imputado en este caso en funciones oficiales o actividades legítimas de deporte.

Se alega además que, como resultado del acto, le ocasionó daño a tal grado que le causó la muerte. **Agravante Artículo 7.03 de la Ley de Armas**.

Hecho contrario a la ley.[5]

Concluido el descubrimiento de prueba, se llevó a cabo el Juicio por Jurado los días 5, 6 ,9, 12 y 15 de diciembre de 2022. La prueba presentada por el Ministerio Público, sin objeción de la Defensa, consistió en los siguientes documentos:

*Exhibit* 1: 24 Fotografías

*Exhibit* 2: Solicitud de Servicio Forense

*Exhibit* 3: Informe Médico Forense (PAT-1148-19)

*Exhibit* 4: Certificación Análisis Toxicológico (TOX-40821)

*Exhibit* 5: Informe de Análisis de Escena

*Exhibit* 6: Hoja de Incidente de Servicios de Emergencias Médicas del 17 de marzo de 2019.

*Exhibit* 7: Certificación Recibo de Armas y Municiones (PPR-618.4)

*Exhibit* 8: Cadena de Custodia

*Exhibit* 9: Formulario de Consentimiento a un Registro

*Exhibit* 10: Récord Médico Sala de Emergencias Hospital Menonita de Guayama.

*Exhibit* 11: Croquis Policía de Puerto Rico (Planimetría Forense)

Exhibit 12: Video (Traído en CD)

*Exhibit* 13: Fotografía

*Exhibit* 14: Advertencias Miranda Para Persona Sospechosa PPR-615.4 7/ (2 Hojas) Declaración de Persona Sospechosa (4 Hojas)

*Exhibit* 15: Armas, Casquillos, Peine (5 Piezas en la Caja) (PATI1148-19)

En cuanto a la prueba testifical, por parte del Estado, prestaron declaraciones el señor José A. Suárez Alvarado, el señor

---

[5] *Íd.*

José Waldemar Ruíz Falú, el señor Sony Ortiz Correa, los Agentes Orlando Ortiz Santiago y Carlos León Vázquez, respectivamente. Además, se estipuló el testimonio de la Patóloga Forense, la Doctora Rosa Rodríguez, al igual que el Informe Toxicológico realizado al señor Carlos J. Correa Reyes (en adelante, señor Correa Reyes). Otros testigos excusados y cuyas declaraciones se estipularon fueron el testimonio de la señora Irene Reyes Laboy, quien identificó el cadáver y el testimonio de la persona que custodió la escena, agente Luis F. Dávila Colón.

Los hechos delictivos que culminaron con el asesinato del señor Correa Reyes ocurrieron el 17 de marzo de 2022 en las cercanías de la Marina en Salinas, Puerto Rico. A continuación, exponemos brevemente los testimonios esenciales del juicio en su fondo.

### José A. Suárez Alvarado

El primer testigo del Ministerio Público fue el señor José A. Suárez Alvarado (en adelante, señor Suárez Alvarado). En síntesis, declaró que, conoce a la parte apelante y al señor Correa Reyes porque ambos fueron pareja de su suegra.[6] En lo pertinente a la noche de los hechos, el señor Suárez Alvarado declaró que, entre el 16 y 17 de marzo de 2019 buscó al señor Rodríguez de León para ver una pelea de boxeo,[7] y que al llegar al negocio "Casita de Playa" se dirigió al baño cuando de repente escuchó una discusión entre el señor Rodríguez de León y el señor Correa Reyes.[8] Declaró que, la discusión surgió a raíz de que el señor Correa Reyes se paró frente a la parte apelante y no lo quería dejar pasar, quien le expresó tajante que le dejara pasar, manifestando, "con permiso" ante la obstrucción del paso .[9] Agregó que, en ese momento, éste le observó

---

[6] Transcripción de la Prueba Oral Estipulada, vista 5 de diciembre de 2022, pág. 33, líneas 13-17; pág. 35, líneas 12-19.
[7] *Íd.*, pág. 36, líneas 11-16.
[8] *Íd.*, pág. 37, líneas 1-7.
[9] *Íd.*

visiblemente molesto y que al salir del local junto con el señor Rodríguez de León, este se percató que el señor Correa Reyes los iba siguiendo en una guagua Nissan Armada color gris.[10] Sostuvo que, al llegar al estacionamiento del negocio "Tus Antojos", el señor Correa Reyes se estacionó justo al lado de ellos, acto seguido, éste último se bajó de su guagua y "le zumbó" un puño a la parte apelante.[11]

El señor Suárez Alvarado indicó que, en ese momento el señor Rodríguez de León sacó una pistola y le disparó al señor Correa Reyes, el señor Correa Reyes comenzó a correr, como tratando de escapar.[12] La parte apelante corrió detrás de él hasta que ambos entraron en un callejón, ahí forcejearon con el arma hasta que ésta se disparó. El señor Suárez Alvarado declaró que luego del suceso, la parte apelante salió del callejón, se montó en el carrito de golf y se fue del lugar de los hechos.[13] Por último, indicó que en ese momento no llamó a la Policía y se fue directo a su casa. Sin embargo, al día siguiente lo entrevistó el Agente León Vázquez.[14]

En el contrainterrogatorio el señor Suárez Alvarado afirmó que al iniciar la noche el señor Rodríguez de León no estaba molesto ni alterado.[15] Agregó que, al escuchar el segundo disparo no pudo ver lo que pasó porque la parte apelante y el señor Correa Reyes estaban dentro del callejón.[16] Finalmente, expresó que el señor Correa Reyes fue quien provocó e inició la situación cuando le zumbó el puño al señor Rodríguez de León.[17]

---

[10] *Íd.*, pág. 57, líneas 10-13.
[11] *Íd.*, pág. 63, líneas 8-16.
[12] *Íd.*, pág. 65, líneas 17-19; pág.66, líneas 13-16.
[13] *Íd.*, pág. 70, líneas 7-13.
[14] *Íd.*, pág. 74, líneas 11-19.
[15] *Íd.*, pág. 75, líneas 14-19; pág. 76, líneas 1-19.
[16] *Íd.*, pág. 87, líneas 1-19.
[17] *Íd.*, pág. 89, líneas 10-19.

**José Waldemar Ruíz Falú**

El segundo testigo del Ministerio Público fue el señor José Waldemar Ruíz Falú (en adelante, señor Ruíz Falú). El señor Ruíz Falú expresó que conoció al señor Rodríguez de León el día de los hechos, sin embargo, conocía al señor Correa Reyes desde hace varios años.[18] Sostuvo que, la noche del incidente escuchó dos (2) detonaciones alrededor de la 1:00 am.[19] Explicó que, una vez culminó el peligro, salió al área donde quedan ubicados los locales "Sal pa' dentro" y "Tus Antojos" y ahí se encontró al señor Correa Reyes tirado encima de unos tanques de gas.

Narró, que la ambulancia se tardó en llegar, por lo que trató con ayuda de otras personas que se acercaron al área, de montar al señor Correa Reyes en su guagua para llevarlo al hospital, sin embargo, se percató que éste ya no tenía signos vitales.[20] Por último, el señor Ruíz Falú describió los *Exhibits* 1B,10, I, J, K, L, M, N, Ñ, entre los cuales se proyectó el área de la escena donde ocurrió la muerte del señor Correa Reyes.[21]

**Sony Ortiz Correa**

El tercer testigo del Ministerio Público fue el señor Sony Ortiz Correa (en adelante, señor Ortiz Correa). El señor Ortiz Correa declaró que, el 17 de marzo de 2019 se encontraba en el local "Sal pa' dentro" y vio al señor Correa Reyes en el estacionamiento del local y decidió salir a saludarlo.[22] De repente, observó que éste se bajó de su guagua y le zumbó un puño a la parte apelante.[23]

El testigo expresó que, en ese momento la parte apelante sacó la pistola y le disparó al señor Correa Reyes.[24] Añadió que acto

---

[18] Transcripción de la Prueba Oral Estipulada, vista 6 de diciembre de 2022, pág. 114, líneas 1-5.
[19] *Íd.*, Transcripción de la Prueba Oral Estipulada, vista 6 de diciembre de 2022, pág. 116, líneas 10-12; pág. 117, líneas 6-7.
[20] *Íd.*, Transcripción de la Prueba Oral Estipulada, vista 6 de diciembre de 2022, pág. 119, líneas 5-12.
[21] *Íd.*, págs. 119-139, líneas 1-19.
[22] *Íd.*, pág. 160, líneas 6-9.
[23] *Íd.*, pág. 161, líneas 1-15.
[24] *Íd.*, pág. 162, líneas 1-7.

seguido, el señor Correa Reyes trató de esquivar al señor Rodríguez de León, sin embargo, éste corrió detrás de él y le disparó por segunda vez. Continuó narrando, que el señor Correa Reyes y la parte apelante entraron a un callejón y "forcejeando" el arma, se disparó.[25] Señaló que, al finalizar los disparos corrió al callejón y vio al señor Correa Reyes tirado en el suelo.[26]

Por último, sostuvo que esa noche escuchó entre tres (3) a cuatro (4) detonaciones y afirmó que el primer disparo ocurrió luego del puño.[27] A preguntas del fiscal Ojeda Marini, expresó que habló con la Policía León Vázquez con quien se entrevistó al día siguiente de los hechos.[28]

### Agente Orlando Ortiz Santiago (Placa 15938)

El cuarto testigo del Ministerio Público fue el Agente Orlando Ortiz Marini (en adelante, Agente Ortiz Santiago). Indicó que es agente del Negociado de la Policía de Puerto Rico y se encuentra adscrito a la División de Servicios Técnicos, en el Cuerpo de Investigaciones Criminales (en adelante, CIC, por sus sigas en español) de Guayama.[29]

En lo pertinente al día de los hechos, relató que el 17 de marzo de 2019 recibió una querella entre las 12:30 am y 2:00 am para atender un asesinato en el área de la playa del municipio de Salinas.[30] Expresó que, llegó a la escena a las 2:50 am y realizó el proceso investigativo.[31] Luego de completar la investigación, se dirigió al cuartel donde se encontró con el señor Rodríguez de León, quien llegó voluntariamente. Allí le confiscó sus pertenencias,

---

[25] *Íd.*, pág. 163, líneas 1-19.
[26] *Íd.*, pág. 168, líneas 10-15.
[27] *Íd.*, pág. 178, líneas 12-14.
[28] *Íd.*, pág. 181, líneas 4-14.
[29] Transcripción de la Prueba Oral Estipulada, vista 9 de diciembre de 2022, pág. 245, líneas 1-12.
[30] *Íd.*, pág. 252, líneas 1-19.
[31] *Íd.*, pág. 256, líneas 10-13.

incluyendo el arma de fuego y le tomó fotografías de los golpes en la cara.[32]

En el contrainterrogatorio, el Agente Ortiz Santiago explicó que, entre las cosas ocupadas en el cuerpo del occiso se encontró "una bolsita".[33] Sostuvo que, a raíz de su experiencia en el área investigativa, pudo deducir que contenía cocaína, dato que se confirmó a través de la prueba pericial.[34]

### Agente Carlos M. León Vázquez (Placa 28905)

El quinto testigo del Ministerio Público lo fue el Agente Carlos M. León Vázquez (en adelante, Agente León). Éste declaró que trabaja para el Negociado la Policía de Puerto Rico desde hace veintitrés (23) años. Añadió que está adscrito como agente investigador a la División de Homicidios de CIC de Guayama.[35]

El Agente León Vázquez relató que en la madrugada del 17 de marzo de 2019 recibió una llamada con referencia a una querella de asesinato. Detalló que, acto seguido se preparó para llegar a la escena, sin embargo, previo a llegar al lugar de los hechos, se personó al cuartel de Guayama.[36] Sostuvo que al llegar al cuartel se encontró con la parte apelante y tres personas que se identificaron como familiares. Expresó que, el señor Rodríguez de León llegó con una mancha de sangre en el pecho, con el arma homicida y en ese momento lo puso bajo arresto y le leyó las advertencias de ley.[37]

Por otra parte, al llegar al lugar de los hechos alrededor de las 5:00 am se encontró con el Agente Ortiz Marini y la fiscal Ámbar Ramos Ortiz.[38] Describió la escena y explicó que observó una guagua marca Nissan color gris estacionada en reversa entre los

---

[32] *Íd.*, pág. 257, líneas 1-15.
[33] *Íd.*, pág. 306, líneas 16-19; pág. 307, líneas 1-9.
[34] *Íd.*, pág. 304, líneas 1-10.
[35] Transcripción de la Prueba Oral Estipulada, vista 12 de diciembre de 2022, pág. 330, líneas 1-10.
[36] *Íd.*, pág. 335, líneas 1-10.
[37] *Íd.*, pág. 339, líneas 13-19; pág. 340, líneas 13-15.
[38] *Íd.*, pág. 354, líneas 1-10.

restaurantes "Tus Antojos" y "Sal pa' dentro".[39]   También sostuvo que, en el referido callejón se encontró con el cuerpo sin vida del señor Correa Reyes y que recuperó casquillos de balas, tomó fotos y documentó la información. En el contrainterrogatorio, reafirmó que según el informe toxicológico realizado al señor Correa Reyes, este utilizó cocaína y alcohol y que arrojó resultados positivos a ambas sustancias.[40]

Justipreciada la prueba vertida y luego de deliberar, el Jurado emitió un veredicto unánime, donde encontró culpable al señor Rodríguez de León por el delito de Asesinato Atenuado (artículo 95 del Código Penal, *supra,* y por Disparar o apuntar un arma (artículo 5.15 de Ley de Armas, *supra.*[41] Posteriormente, el Tribunal celebró una Vista de Agravantes y Atenuantes para el 9 de febrero de 2023.[42]

El 3 de mayo de 2023, el TPI dictó *Sentencia* e impuso una pena de once (11) años y tres (3) meses de cárcel por violación al artículo 95 Código Penal, *supra,* en el caso GVI2019G0014. El cumplimiento de dicha condena sería de forma consecutiva a otra pena carcelaria de siete (7) años por infracción al artículo 5.15 Ley de Armas, *supra,* en el caso GLA2019G0073. Cabe destacar que, por virtud del artículo 7.03 de la Ley de Armas, 25 LPRA sec. 460b, la pena del artículo 5.15 se duplicó.

Consecuentemente, en la *Sentencia* el TPI condenó a la parte apelante a un término de dieciocho (18) años y tres (3) meses de reclusión y, además, se impuso el pago del arancel especial en los dos cargos.[43] El 18 de mayo de 2023, la parte apelante radicó una *Moción de Reconsideración de Sentencia,* la cual fue declarada *No ha Lugar* por el foro primario el 8 de junio de 2023.

---

[39] *Íd.*, pág. 354, líneas 11-19.
[40] *Íd.*, pág. 420, líneas 7-19.
[41] *Íd.*, pág. 477, líneas 10-18; pág. 478, líneas 1-2.
[42] *Íd.*, pág. 481, línea 18.
[43] Ley Núm. 183 -1998, 25 LPRA sec. 981 *et seq,* según enmendada.

Inconforme con tal determinación, el 28 de junio de 2023 el señor Rodríguez de León compareció ante este Tribunal de Apelaciones mediante el presente Recurso de Apelación y formuló los siguientes señalamientos de error:

> Erraron los honorables miembros del Jurado al declarar culpable al apelante de haber violado lo dispuesto en el artículo 95 del Código Penal y el artículo 5.15 de la Ley de Armas cuando la prueba presentada por el Ministerio Público no sustenta el fallo y, de hecho, la misma no derrotó la presunción de inocencia que acompaña al compareciente.

> Erraron los honorables miembros del Jurado al determinar la culpabilidad del acusado en la acusación radicada en su contra por violación al Artículo 5.15 de la Ley de Armas habida cuenta de que el Ministerio Público no alegó en la acusación ni se probaron en el juicio todos los elementos que configuran el delito que se le trató de imputar.

> Erró el Honorable Tribunal de Instancia al no aplicar al momento de dictar sentencia en cuanto al Artículo 5.15 de la ley de Armas, la doctrina establecida y adoptada en el caso de *Apprendi v. New Jersey*, 530 US 466 (2000), en el sentido de que la Constitución Federal exige que cualquier hecho o disposición que aumente la pena más allá del máximo establecido por ley, que no sea la razón una convicción previa (reincidencia) debe somet[é]rsele al jurado y probarse más allá de duda razonable.

Luego de culminarse el proceso de Transcripción Oral del Juicio en su Fondo por la vía privada, en mociones separadas presentadas el 19 y 26 de octubre de 2023 respectivamente, las partes estipularon la transcripción. El señor Rodríguez de León presentó su alegato suplementario el 13 de noviembre de 2023. Por su parte, el Ministerio Público presentó su escrito el 11 de diciembre de 2023 por conducto de la Oficina del Procurador General de Puerto Rico.

El 11 de junio de 2024, ordenamos al TPI a que nos remitiera los auto originales del presente caso en calidad de préstamo, los cuales fueron recibidos el 20 de junio de 2024. Examinado el recurso en su totalidad, la transcripción de la prueba, los autos originales y con el beneficio de la comparecencia de ambas partes, resolvemos.

*-II-*

*-A-*

La presunción de inocencia es un derecho de rango constitucional en nuestro ordenamiento jurídico. Nuestra Carta Magna expresamente dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho [...] a gozar de la presunción de inocencia". CONST. PR, Artículo II, Sec. 11 LPRA, Tomo 1. Adviértase que, "la presunción de inocencia es un derecho fundamental que le asiste a toda persona acusada de delito en nuestro ordenamiento jurídico". *Pueblo v. Colón González,* 209 DPR 967, 999 (2022); *Pueblo v. Santiago et al.*, 176 DPR 133, 142 (2009).

El Tribunal Supremo de Puerto Rico ha establecido como salvaguarda de ese derecho constitucional que, para rebatir la presunción de inocencia, la prueba que presente el Ministerio Público debe ser una que satisfaga el estándar probatorio máximo en nuestro ordenamiento jurídico. Es decir, la prueba presentada por el Estado debe ser una que demuestre la comisión de los hechos imputados más allá de duda razonable. Regla 110 (f) de Evidencia de Puerto Rico, R. EVID. 110(f), 32 LPRA Ap. IV (2010); *Pueblo v. Negrón Ramírez,* 2024 TSPR 41; 213 DPR __ (2024). Esto es, "prueba suficiente para derrotar la presunción de inocencia que cobija a un acusado es aquella que permite hallar a un ciudadano culpable de la comisión de un delito al probar, más allá de duda razonable, todos los elementos del delito y la conexión del acusado con éstos". *Pueblo v. Toro Martínez,* 200 DPR 834, 855-856 (2018).

Es sabido que, el cumplimiento de este estándar no supone la necesidad u obligación de probar la comisión del delito con certeza matemática. *Íd.,* pág. 856. Lo que nuestro máximo Foro Judicial ha reiterado es que

> **Lo que se exige, como imperativo constitucional, es "prueba satisfactoria y suficiente en derecho [...] que produzca certeza o convicción moral en una**

> **conciencia exenta de preocupación o en un ánimo no prevenido"**. (Énfasis en el original). *Pueblo v. Toro Martínez, supra,* pág. 856. **Así pues, para derrotar la presunción de inocencia y probar la comisión de un delito más allá de duda razonable, no se requiere que toda duda posible tenga que ser destruida, sino que se derrote la duda razonable, la que vendría siendo aquella duda fundada en el raciocinio de todos los elementos de juicio envueltos en el caso y que no constituye una duda especulativa o imaginaria**. *Pueblo v. Negrón Ramírez, supra, Pueblo v. García Colón I,* 182 DPR 129, 175 (2011); *Pueblo v. Bigio Pastrana, supra,* págs. 760-761; *Pueblo v. Gagot Mangual,* 96 DPR 625, 627 (1968). (Énfasis nuestro).

El cumplimiento de determinar si se satisfizo el estándar probatorio de más allá de duda razonable que impone la Regla 110 de Evidencia, *supra,* corresponde inicialmente al juzgador de hechos, quien vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos. **Así las cosas, en casos criminales con derecho a juicio por Jurado, esta función le corresponde al Jurado, el cual está constitucionalmente encomendado a recibir la prueba, adjudicar los hechos en base a ésta y aplicar el derecho según le instruya el tribunal.** *Pueblo v. Negrón Ramírez, supra; Pueblo v. Santa Vélez,* 177 DPR 61, 65-66 (2009); *Pueblo v. Negrón Ayala,* 171 DPR 406, 414 (2007). (Énfasis nuestro).

A tenor con esta garantía constitucional, nuestro sistema de derecho establece que una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. Regla 301 de Evidencia, R. EVID. 301, 32 LPRA Ap. IV (2010). A ese hecho o grupo de hechos previamente establecidos se le denomina "hecho básico". Al hecho deducido mediante la presunción se le nombra "hecho presumido". *Íd.* Como parte de este prisma normativo, se desprende de la Regla 303 de Evidencia, R. EVID. 303, 32 LPRA Ap. IV (2010);

> Cuando en una acción criminal la presunción perjudica a la persona acusada, tiene el efecto de permitir a la

juzgadora o al juzgador inferir el hecho presumido si no se presenta evidencia alguna para refutarlo. Si de la prueba presentada surge duda razonable sobre el hecho presumido, la presunción queda derrotada. La presunción no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada. Reglas de Evidencia, *supra.*

Así las cosas, en la esfera penal, el efecto de una presunción "depende de si esta beneficia o perjudica al acusado. Ciertamente, una presunción que favorece al Ministerio Público y perjudica al acusado tiene que ser una presunción controvertible, permisiva y débil". *Pueblo v. Colón González, supra,* pág. 1001; *Pueblo v. Nieves Cabán,* 201 DPR 853, 873 (2019). En el ámbito criminal, el efecto de esta categoría de presunción estriba esencialmente en que no se transfiere al acusado el peso de la prueba ni la obligación de persuadir al juzgador. El Tribunal Supremo de Puerto Rico ha reiterado que "[n]o obstante, aun si este no estableciera la inexistencia de tal nexo causal, para que esta presunción satisfaga el criterio de probabilidad y, por ende, sea permisible contra un acusado, ***es esencial que la inferencia no sea la única base en la cual descansa la determinación de culpabilidad".*** *Pueblo v. Meléndez Monserrate,* 2024 TSPR 80; 213 DPR ___ (2024); (Bastardilla y subrayado en el original, énfasis nuestro).

### -B-

El artículo 92 del Código Penal, 33 LPRA Sec. 5141, define el delito de asesinato como la acción de dar muerte a un ser humano a propósito, con conocimiento o temerariamente. Por su parte, el artículo 95 del Código Penal, *supra,* tipifica el delito de asesinato atenuado. Esta disposición penal legislativa establece que se comete el delito:

> Toda muerte causada a propósito, con conocimiento o temerariamente, que se produce como consecuencia de una perturbación mental o emocional suficiente para la cual hay una explicación o excusa razonable o súbita pendencia, será sancionada con pena de reclusión por

un término fijo de quince (15) años. *Pueblo v. Guadalupe Rivera,* 206 DPR 616, 633 (2021).

De esta forma, se comete el delito de asesinato atenuado "al dar muerte a un ser humano como consecuencia de una súbita pendencia o arrebato de cólera, causado por una provocación adecuada de la víctima". *Pueblo v. Negrón Ayala, supra,* pág. 417. En virtud de lo anterior, nuestro máximo Foro Judicial ha definido el concepto de "súbita pendencia o arrebato de cólera", como aquella circunstancia atenuante, por la cual la acción del acusado "fue una reacción irreflexiva, pasional, súbita e inmediata, provocada por la víctima u otra persona actuando con ésta, sin un plan previo para matar". *Pueblo v. Guadalupe Rivera, supra,* pág. 634, citando a *Pueblo v. Negrón Ayala, supra,* pág. 417; *Pueblo v. Moreno Morales I,* 132 DPR 261, 284 (1992).

Así pues, el delito de asesinato atenuado debe ser causado por una provocación adecuada; es decir, la provocación debe ser de tal naturaleza que haga perder el dominio de sí mismo a un hombre de temperamento ordinario obligándolo a actuar por el impulso sin la debida reflexión. Ahora bien, el asesinato atenuado, en la modalidad de súbita pendencia no necesariamente requiere una provocación previa. *Pueblo v. López Rodríguez,* 101 DPR 897,900 (1974). Pues, solo basta demostrar la existencia de una pelea súbita, a la cual se entra sin la intención previa de matar u ocasionar grave daño corporal. *Pueblo v. Rivera Alicea,* 125 DPR 37, 46 (1989).

A tenor con lo anterior, para determinar la comisión del delito de asesinato atenuado, el juzgador deberá identificar, al menos, tres factores: (1) la muerte haya ocurrido mientras el actor se encontraba en un arrebato de cólera o de pendencia súbita; (2) la muerte esté precedida de una provocación adecuada, y (3) la muerte ha ocurrido antes de que el arrebato o pendencia sufrida por el actor se hubiere razonablemente "enfriado". *Pueblo v. Negrón Ayala, supra,* pág. 417.

En fin, el delito de asesinato atenuado se consuma al incurrir en un acto intencional —con propósito, conocimiento o temerariamente— que causa la muerte a otra persona, pero, por existir circunstancias atenuantes importantes, el delito y la pena cambian en beneficio del acusado. *Íd.* **Es decir, se modifica el delito y la pena a favor del acusado por las circunstancias que disipan la gravedad de la conducta, pues, sin estas, la persona incurriría en el delito de asesinato en primer grado o asesinato segundo grado**. *Pueblo v. Guadalupe Rivera, supra*, pág. 634. (Énfasis suplido).

### -C-

La Ley Núm. 404-2000, *supra*, fue aprobada con el propósito principal de lograr una solución efectiva al problema del control de armas de fuego en manos de delincuentes en Puerto Rico, el cual constituye una "vertiente directa de la actividad criminal". *Exposición de Motivos* de la Ley de Armas [Parte 3] Leyes de Puerto Rico 2601. Según dispuso expresamente el legislador, "[e]stas armas son utilizadas durante la comisión de todo tipo de actos criminales, situación que hace necesario adoptar medidas legislativas cuya naturaleza sancionadora constituya un eficaz disuasivo al delincuente". *Id.*, págs. 2601–2602. *Pueblo v. Concepción Guerra,* 194 DPR 291, 310 (2015).

Enmarcado dentro del mencionado propósito legislativo, el artículo 5.15 de la Ley de Armas, *supra*, regula la conducta proscrita con relación a apuntar o disparar un arma. Este artículo establece que incurrirá en delito grave, con pena de reclusión de un término fijo de cinco años, toda persona que voluntariamente dispare cualquier arma en un lugar público, o en cualquier otro sitio donde haya alguna persona que pueda sufrir daño, o que intencionalmente, aunque sin malicia, apunte hacia alguna persona con un arma, aunque no le cause daño a la persona. El Tribunal

Supremo de Puerto Rico ha interpretado que "**este artículo autoriza la posibilidad de aumentar hasta un máximo de diez años o reducir hasta un mínimo de un año la pena fija establecida de mediar circunstancias agravantes o atenuantes**". *Pueblo v. Concepción Guerra, supra,* pág. 311. (Énfasis nuestro).

Posterior a la entrada en vigor de la Ley de Armas, *supra,* surgió la necesidad de reevaluar su contenido para atemperarlo a las exigencias de nuestra sociedad. *Exposición de Motivos* de la Ley Núm. 137-2004, 2004 [Parte 1] Leyes de Puerto Rico 756. No obstante, la Asamblea Legislativa. Ahora bien, el artículo 7.03 de la Ley de Armas, *supra,* sobre el agravamiento de las penas, fue enmendado por la Ley Núm. 137-2004 a los fines de añadir el siguiente párrafo:

.    .    .    .    .    .    .    .

> Todas las penas de reclusión que se impongan bajo este capítulo serán cumplidas consecutivamente entre sí y consecutivamente con las impuestas bajo cualquier otra ley. Además, si la persona hubiere sido convicta anteriormente por cualquier violación a este capítulo o por cualquiera de los delitos especificados en la sec. 456j de este título **o usare un arma en la comisión de cualquier delito y como resultado de tal violación alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará**. (Énfasis suplido).

Surge de la Exposición de Motivos de la Ley Núm. 137-2004, que la Asamblea Legislativa aprobó la misma para "fortalecer las herramientas al alcance del sistema judicial y corregir lagunas existentes para penalizar severamente al delincuente que hace mal uso de la licencia de armas y sus permisos, así como el uso de armas y municiones ilegales". Asimismo, consta del historial legislativo de la precitada Ley que el artículo 7.03, *supra,* fue enmendado para "añadir un nuevo párrafo que dispone que las penas serán cumplidas consecutivamente entre sí y consecutivamente con las impuestas bajo cualquier otra ley. Además, en el caso de

reincidentes y **cuando existan daños a terceros por el uso ilegal del arma, la pena se duplicará**".[44] (Énfasis nuestro).

El Tribunal Supremo de Puerto Rico en el caso de *Pueblo v. Concepción Guerra, supra,* tuvo la oportunidad de dilucidar el alcance del artículo 7.03 de la Ley de Armas, *supra,* en lo que atañe a la autoridad para duplicar la pena impuesta a un acusado cuando medien agravantes y atenuantes. En cuanto a ese aspecto, nuestra más alta Curia resolvió **"que la pena que dicho artículo autoriza duplicar es la dispuesta para el delito imputado una vez contemplados los posibles agravantes y atenuantes"**. *Íd,* pág. 313. (Énfasis nuestro). Nuestro más alto Foro Judicial aclaró que, "en ausencia de agravantes y atenuantes, la duplicación se regirá por la pena fija establecida en el delito". *Íd,* pág. 313-314. Asimismo, reiteró que, de conformidad con las observaciones de la Comisión de lo Jurídico de la Cámara de Representantes, "**el artículo 7.03 de la Ley de Armas,** *supra,* **se enmendó a los fines de disponer que la pena se duplicará en los casos de reincidentes y <u>cuando existan daños a terceros por el uso de un arma ilegal</u>**". *Íd.,* pág. 312. (Énfasis y subrayado nuestro).

### -III-

En el presente recurso, el señor Rodríguez de León impugna la suficiencia de la prueba y alega que, el Ministerio Público no demostró su culpabilidad más allá de duda razonable. Por otro lado, aduce que el foro de instancia erró al duplicar la pena sin previamente haber presentado ante el Jurado el agravante y probarlo más allá de duda razonable, según establece el caso de *Apprendi v. New Jersey,* 530 US 466 (2000).

---

[44] Informe sobre el P. de la C. 4641 rendido por la Comisión de lo Jurídico de la Cámara de Representantes de 24 de mayo de 2004, 7ma Sesión Ordinaria, 14ta Asamblea Legislativa.

Por estar íntimamente relacionados, atenderemos los dos primeros señalamientos error en conjunto, los cuales versan sobre los elementos del delito y la presunción de inocencia del acusado. Examinado el expediente en su totalidad, así como la transcripción de la prueba, constatamos que una discusión entre la parte apelante y el señor Correa Reyes puso en marcha la cadena de eventos que culminó con la muerte de este último. *Veamos.*

Según se desprende de los testimonios de la prueba de cargo, la noche en que murió el señor Correa Reyes, éste y el señor Rodríguez de León coincidieron en un negocio llamado "Casita de Playa". Ahí inició una discusión entre ambos cuando el señor Correa Reyes se paró de frente a la parte apelante y alegadamente no lo quería dejar pasar. Ante la situación, éste decidió salir del lugar con su acompañante y el señor Correa Reyes los siguió en su vehículo hasta el próximo local. Una vez llegaron al estacionamiento que ubica entre los restaurantes "Sal pa' dentro" y "Tus Antojos" el señor Correa Reyes se estacionó al lado del señor Rodríguez de León. Acto seguido, el señor Correa Reyes se bajó de su vehículo y, sin mediar palabra, le propició un puño en la cara a la parte apelante. En reacción al golpe, el señor Rodríguez de León sacó su arma y disparó en varias ocasiones que posteriormente causó la muerte del señor Correa Reyes.

En el presente caso, los actos cometidos por el señor Rodríguez de León configuraron el delito de Asesinato Atenuado tipificado en el artículo 95 del Código Penal, *supra*, el cual se infringe cuando una persona da muerte a otra sin la intención previa de matar, a raíz de un arrebato de cólera o súbita pendencia y, a consecuencia, de una provocación adecuada por parte de la víctima [...]. *Pueblo v. Rivera Alicea, supra*, pág. 46 (1989). A su vez, la parte apelante infringió el Artículo 5.15 de la Ley de Armas, *supra*, el cual dispone que incurrirá en delito grave toda persona que

voluntariamente dispare cualquier arma en un lugar público o en cualquier otro sitio donde haya alguna persona que pueda sufrir daño o que intencionalmente, sin malicia, apunte hacia alguna persona con un arma, aunque no le cause daño a la persona.

Así pues, en el caso ante nuestra consideración los actos del señor Rodríguez de León responden a una evidente súbita pendencia provocada por parte de la víctima, el señor Correa Reyes. Es decir, el occiso confrontó y discutió con la parte apelante, luego lo siguió en su vehículo hasta llegar al lugar de los hechos y allí sin mediar palabra, le propició un golpe. En reacción a este evento, el señor Rodríguez de León sacó un arma y le disparó bajo un estado emocional alterado y cegado por el coraje. El señor Rodríguez de León, le propició varios disparos al señor Correa Reyes ante la súbita pendencia que provocó éste cuando lo confrontó, lo siguió y finalmente golpeó al señor Rodríguez de León.

En el presente caso, el Estado demostró que el señor Rodríguez de León apuntó y disparó en un lugar público al señor Correa Reyes bajo súbita pendencia provocada y probó más allá de duda razonable que la parte apelante infringió los elementos del delito de Asesinato Atenuado, Artículo 95 del Código Penal, *supra*, y del Artículo 5.15 de la Ley de Armas, *supra*. A su vez, los honorables Miembros del Jurado confirieron credibilidad a las declaraciones de los testigos y halló la suficiencia de la prueba, en derecho para derrotar la presunción de inocencia del acusado y sostener el veredicto de culpabilidad de manera unánime en contra del señor Rodríguez de León. *No se cometieron los errores señalados.*

Como tercer señalamiento de error, la parte apelante aduce que previo a duplicar la pena el Estado debió probar ante el Jurado todos los elementos del agravante más allá de duda razonable en virtud del caso *Apprendi v. New Jersey*, *supra*, no nos persuade. Veamos.

A manera de breve reseña, el precitado caso federal, lo que establece es que cualquier **determinación de hechos** que pueda aumentar la pena más allá del máximo establecido por ley tiene que ser adjudicado por el jurado. Sin embargo, tal señalamiento no es contradictorio con nuestra legislación ni el artículo 7.03, *supra.* Por lo tanto, la doctrina establecida en el *Apprendi v. New Jersey, supra,* no es de aplicación a la controversia ante nuestra consideración.

En lo pertinente, el referido artículo 7.03, *supra,* dispone que cuando se usare un arma de fuego en la comisión de cualquier delito y como resultado de tal violación alguna persona sufriera daño físico, la pena establecida para el delio se duplicará. En este caso, la pena del artículo 5.15, *supra.* En ese sentido, este Tribunal ha interpretado en varias ocasiones, que la disposición legislativa del artículo 7.03, *supra,* es una directriz al momento de imponer la sentencia sobre la duplicidad automática, una vez haya una convicción. Adviértase que, esta disposición estatutaria solo enmarca las posibilidades donde se duplicará la pena de manera específica.

Por lo tanto, el Ministerio Público, no tiene el deber de probarle al Jurado, en una vista de agravantes, las circunstancias que activan la duplicidad de la pena a consecuencia del artículo 7.03, *supra,* por ser una cuestión estricta de derecho. La duplicidad de la pena es una directriz estatutaria dirigida al sentenciador al momento de imponer la sentencia.

Nótese que la duplicidad de la pena se activa con las circunstancias en las que se comete el delito tipificado en el artículo 5.15, supra. En el presente caso, el apelante fue declarado culpable y convicto por causar la muerte de Carlos J. Correa Reyes mediante el uso de un arma de fuego. En otras palabras, las circunstancias que activaron la aplicación del artículo 7.03, *supra, en el caso de marras,* fueron parte de la prueba desfilada en juicio y que

motivaron la convicción del señor Rodríguez De León.   A tenor con lo anterior, resaltamos que duplicar la pena no es un acto discrecional al momento de imponer la sentencia, por lo tanto, no era necesaria una vista de agravantes ante el Jurado.  *No se cometió el error señalado.*

**-IV**-

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, *confirmamos* la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones